903 A.2d 1178

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Ernest R. WHOLAVER, Jr., Appellant.**

Supreme Court of Pennsylvania.

Argued May 9, 2006.

Decided Aug. 22, 2006.

---

9. Brief of Appellants at 18.

Paul Watson Muller, Anne Elizabeth Gingrich, for Ernest R. Wholaver, Jr.

Francis T. Chardo, Amy Zapp, Harrisburg, for Com.

BEFORE: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice SAYLOR.

This is a capital direct appeal challenging the appellant's convictions and sentences of death arising from, among other criminal acts, his killing of his wife and two children in Middletown, Pennsylvania.

As background, in July 2002, Appellant, Ernest R. Wholaver, Jr., was charged with multiple sexual offenses for alleged conduct involving his two daughters, Victoria and Elizabeth, the latter of whom was still a minor at the time the charges were lodged. On behalf of Elizabeth, Appellant's wife, Jean Wholaver, obtained an order under the Protection From Abuse Act, see 23 Pa.C.S. §§ 6101–6122, which included provisos that Appellant was evicted from the family's Middletown residence, with no right or privilege of entry, and was prohibited from possessing or acquiring firearms. Appellant subsequently took up residence with his mother, father, and younger brother, Scott Wholaver, in Cambria County.

Just after midnight on December 24, 2002, Appellant set out for the Middletown residence with Scott Wholaver. While his brother waited in the vehicle about a block away, Appellant approached the house; cut telephone and other wires leading to it; forcibly gained entry; and shot Jean, Victoria, and

Elizabeth to death with a pistol, leaving Victoria's nine-month-old girl, Madison, alive but alone and unattended. Appellant and his brother then drove to Clearfield County, where Appellant discarded the pistol, a shotgun,[1] and other potentially incriminating items at a remote location.

Following the discovery of the bodies and Madison (who survived) approximately twenty-eight hours after the killings, police obtained search warrants for the Middletown residence to gather evidence. They later executed warrants to search Appellant's person, his vehicle, and the Cambria County home where he was living. Appellant was arrested and charged, *inter alia*, with three counts of first-degree murder, and the Commonwealth furnished notice that it intended to pursue imposition of the death penalty.

Prior to trial, Scott Wholaver pled guilty to third-degree murder and agreed to cooperate as a Commonwealth witness. He led police to the Clearfield County location, from where they retrieved the firearms and other evidence.

Also before trial, the prior sexual offense charges were consolidated with the murder cases. Appellant secured a change of venire, in light of pre-trial publicity. Further, he sought suppression of all evidence deriving from the execution of the search warrants, arguing that the warrants were overly broad and/or manifested various technical defects. The common pleas court refused to suppress the evidence obtained from the Middletown residence, *inter alia*, based on Appellant's lack of any reasonable expectation of privacy in a place from which he was barred under an extant protection-from-abuse order. With respect to the remaining warrants, the court found sufficient specificity and any technical deficiency insufficient to require the application of the exclusionary rule.

At trial, the Commonwealth presented Scott Wholaver as a central witness. He testified that, following Jean Wholaver's decision to seek a divorce, Appellant stated that he would

---

1. There was no evidence that the shotgun was actually used by Appellant in committing the crimes; however, as noted, Appellant was prohibited from possessing firearms under the protection-from-abuse order.

shoot her. He then described the brothers' nocturnal trip to the Middletown residence on December 24th, indicating that Appellant had claimed that he wished only to retrieve his dog. The trip involved furtive activities and was corroborated by a surveillance video obtained by police from a convenience store located mid-way between Cambria County and Middletown. Scott Wholaver testified that, upon arrival in Middletown, he was told to stop the vehicle to permit Appellant to access the rear seat; Appellant then directed him to proceed to a location about a block from the Wholaver residence; he parked the vehicle there and waited as Appellant proceeded toward the residence; Appellant returned five to ten minutes later appearing shaken; Appellant instructed him to drive to the remote Clearfield County location where he saw the shotgun in the rear of the vehicle and watched Appellant shuttle from the vehicle to the woods; and Appellant told him to repeat a false story if asked about his whereabouts during the time period spanning these activities. The Commonwealth also offered testimony from several prisoner-witnesses, who described various incriminatory statements by Appellant, as well as evidence of Appellant's jail-based efforts to hire a West Virginia man to kill the father of Victoria's child, Francisco Ramos, and to fabricate evidence suggesting that Mr. Ramos had killed Jean, Victoria, and Elizabeth Wholaver.[2] Ballistics evidence was presented to connect the pistol found in Clearfield County to the killings (although the association could not be made firmly, because both the firearm and bullets were degraded). Further, the Commonwealth presented evidence that the pistol was registered to Appellant's uncle. The Commonwealth also introduced the preliminary hearing testimony of Elizabeth and Victoria Wholaver from the sexual

---

**2.** A prisoner-witness involved police at an early stage in these efforts, and undercover officers documented Appellant's subsequent solicitation attempts. This conduct was acknowledged by the defense in closing argument, where Appellant's trial counsel suggested that the attempt reflected only an effort by a distraught husband and father to avenge the killing of his family against the man that he believed was the perpetrator. Parenthetically, the defense theory of the case recognized that Mr. Ramos was not the killer but asserted that another man, who had also been intimately associated with Victoria, had perpetrated the murders.

224

assault case under the forfeiture-by-wrongdoing exception to the hearsay rule, *see* Pa.R.E. 804(b)(6), on the theory that they were killed to prevent their testimony. *See id.*

Appellant was convicted of first-degree murder pertaining to each of the killings, and of the separate crimes of killing prosecution witnesses, conspiracy, reckless endangerment (of Madison), burglary, and criminal solicitation related to his attempt to have Mr. Ramos killed. He was acquitted of the sexual offenses, however.

In the penalty phase of the trial, the Commonwealth pursued the in-perpetration-of-a-felony, grave-risk, multiple-murders, and protection-from-abuse-violation aggravators, *see.* 42 Pa.C.S. § 9711(d)(6), (7), (11), (18), incorporating the evidence adduced in the guilt phase.[3] Appellant pursued the no-significant-history-of-prior-criminal-convictions and catch-all mitigators. *See* 42 Pa.C.S. § 9711(e)(1), (8). The jury found all of the aggravators, at least some of the jurors accepted Appellant's proffered mitigators, and the jurors unanimously returned three death sentences as a consequence of their individual weighing determinations. *See* 42 Pa.C.S. § 9711(c)(iv).

Substitute counsel filed of a notice of appeal, and the trial court issued an order requiring Appellant to submit a statement of matters complained of on appeal under Rule of Appellate Procedure 1925(b). Appellant sought and secured multiple extensions, but his appellate counsel failed to file the required statement within the last applicable deadline.

Presently, Appellant challenges the verdicts, based on claims that: the president judge of the common pleas court erred by allocating insufficient funds and/or discretion to the defense to obtain qualified psychiatric and mitigation experts and an investigator; the trial court erred in failing to sever the sexual assault charges from the murder case; the trial court erred in permitting the Commonwealth to introduce prior unsworn statements made by the victims, as well as the preliminary hearing testimony of Victoria and Elizabeth from

---

**3.** The protection-from-abuse aggravator pertained only to the killing of Elizabeth. *See* N.T., August 31, 2004, at 1223.

the sexual assault case; the trial court erred on various grounds in refusing to suppress evidence deriving from police execution of allegedly defective search warrants; the trial court erred in failing to exclude the testimony of Scott Wholaver, as this evidence assertedly was the product of an illegal plea agreement; and the trial court erred in refusing to permit Appellant to introduce, under the excited utterance exception to the hearsay rule, a purportedly exculpatory hearsay statement that he allegedly made to Scott Wholaver.

In its brief, by virtue of Appellant's failure to file a timely statement of matters complained of on appeal, the Commonwealth initially invoked waiver under this Court's decisions in *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998), *Commonwealth v. Castillo*, 585 Pa. 395, 888 A.2d 775 (2005), and *Commonwealth v. Schofield*, 585 Pa. 389, 888 A.2d 771 (2005), with regard to all issues other than those subject to automatic review upon the entry of a death sentence. In a post-submission communication, however, the Commonwealth sought to withdraw its waiver objection with respect to the suppression issues only, primarily based on the representation that it seeks to avoid any potential collateral consequences that might be associated with such waiver on federal habeas corpus review. The Commonwealth also provides substantive responses to all issues, in the event that the waiver by Appellant would not be enforced.

We begin our review of the sufficiency of the evidence, which is automatic. *See Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982). To establish the offense of first-degree murder, the Commonwealth must prove the fact of the killing and the defendant's involvement, and it must establish malice and specific intent to kill on the part of the defendant. *See Commonwealth v. Collins*, 550 Pa. 46, 50, 703 A.2d 418, 420 (1997). In the sufficiency assessment, the evidence is viewed in the light most favorable to the Commonwealth, as verdict winner. *See id.*

In the present case, the evidence offered at trial by the Commonwealth is plainly sufficient to support the first-degree murder convictions and death sentences. The prosecution presented expert testimony from a forensic pathologist concerning his examination of the victims' bodies and his opinion that the manner of the deaths was homicide. Although no eyewitnesses to the actual killings were available, evidence was adduced concerning both intent and opportunity through Scott Wholaver, who testified that Appellant indicated that he would kill his wife and described Appellant's activities connected with his unlawful entry into the Middletown residence contemporaneous with the time of the victims' deaths as determined by the pathologist. As noted, the fact of the brothers' trip from Cambria County to the Middletown residence on December 24th was corroborated by a surveillance videotape and was ultimately acknowledged by the defense in closing argumentation at trial.[4] Further, evidence was admitted concerning a number of acts evidencing consciousness of guilt on Appellant's part, including his concealment of firearms and other items in Clearfield County after the killings, and his documented and undisputed efforts to solicit the murder of Francisco Ramos and to fabricate evidence suggesting that Mr. Ramos had killed Jean, Victoria, and Elizabeth Wholaver. The manner in which the victims were killed, each having been shot in the head from close range, also serves as circumstantial evidence of malice and specific intent to kill on Appellant's part. *See Collins*, 550 Pa. at 51, 703 A.2d at 420 ("Specific intent to kill may be proven by circumstantial evidence, such as the accused using a deadly weapon on a vital part of the victim's body.").

As concerns the aggravating circumstances, the Commonwealth presented competent evidence that the killings were committed in the perpetration of a felony, namely burglary, for purposes of the aggravating circumstance set forth

4. *See, e.g.*, N.T., Aug. 30, 2004, at 1048, 1061. The defense attempted to suggest to the jurors that Appellant happened upon the victims' bodies after the killings had been perpetrated by a former boyfriend of Victoria's. *See id.*

at Section 9711(d)(6) of the death penalty statute. *See* 42 Pa.C.S. § 9711(d)(6). In this regard, burglary is established, *inter alia*, by proof beyond a reasonable doubt that the defendant entered an occupied structure, without license or privilege, with intent to commit a crime therein. *See* 18 Pa.C.S. § 3502. As described above, the evidence was that Appellant entered the Middletown residence with the intention to kill his family; further, the absence of license or privilege of entry on his part was evidenced by the admission of the protection-from-abuse order barring him from the house. *See* N.T., August 23, 2004, at 52–54, Ex. C–32. As noted, this evidence, although initially admitted in the guilt phase of trial, was incorporated into the penalty phase. To prove that Appellant knowingly created a grave risk of death to another person for purposes of the aggravating circumstance at Section 9711(d)(7), the Commonwealth presented evidence that Victoria's nine-month-old baby, Madison, was found unattended near her mother's body approximately twenty-eight hours after she and her mother and sister were killed. A medical doctor also testified that, in the absence of a caregiver for nearly thirty hours, Madison was significantly at risk of death due to an untreated infection; dehydration; and the possibilities of ingestion of toxic household substances, falling down stairs, or drowning in the toilet. *See* N.T., August 23, 2004, at 99–101. Further, the Commonwealth also argued that the child's location near her mother's body when she was found by police served as circumstantial evidence her mother was shot as she held Madison in her arms. The Commonwealth advanced the aggravating circumstances entailing multiple murders, *see* 42 Pa.C.S. § 9711(d)(11), and Appellant's status as the subject of a protection-from-abuse order relative to the killing of Elizabeth, *see* 42 Pa.C.S. § 9711(d)(18), through the evidence already summarized above.

Based on the above, we find the Commonwealth's evidence sufficient to support all aggravating circumstances found by the jury.

Next, we address the question of waiver arising out of Appellant's failure to file a timely statement of matters com-

plained of on appeal as directed by the trial court under Rule of Appellate Procedure 1925(b). Appellant suggests that his claims should not be deemed waived, since all are fully addressed in the trial court's opinion under Rule of Appellate Procedure 1925(a) and/or other dispositive rulings of the court. Similar arguments, however, were presented and rejected in the recent *Castillo* and *Schofield* decisions, where, upon taking the opportunity to reassess the strict waiver rule as announced in *Lord,* a Court majority indicated as follows:

> [W]e reaffirm the bright-line rule first set forth in *Lord* that "in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925. Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived."

*Castillo,* 585 Pa. at 403, 888 A.2d at 780 (quoting *Lord,* 553 Pa. at 420, 719 A.2d at 309); *see also Schofield,* 585 Pa. at 390, 888 A.2d at 772 (indicating that "the bright-line rule set forth in *Lord* [requires that] the failure to comply with Pa.R.A.P. 1925(b) results in automatic waiver of issues raised on appeal"). Significantly, in the *Schofield* case, the Court found the strict waiver rule applicable based on the defendant's imperfect compliance with Rule 1925(b), despite the receipt by the trial court of the statement of matters complained of on appeal and the court's preparation of a Rule 1925(a) opinion. *See id.* at 390–94, 888 A.2d at 772–75.

Based on *Lord, Castillo,* and *Schofield,* the majority of the claims that Appellant seeks to assert must be deemed waived. As noted, however, the Commonwealth has sought to withdraw its opposition to our review solely with respect to Appellant's search and seizure claims.

We decline, however, to grant this post-submission request to withdraw the waiver objection. Notably, the *Castillo* and *Schofield* majority strongly emphasized the bright-line character of *Lord's* strict waiver rule, which it justified by an overarching concern for uniformity and certainty of result in the event of a failure to comply. *See, e.g., Castillo,* 585 Pa. at 401–03, 888 A.2d at 779–80. Further, the Court has otherwise

indicated that the strict waiver rule should not be "selectively enforced ... based on the arguments of the parties." *Commonwealth v. Butler*, 571 Pa. 441, 446, 812 A.2d 631, 634 (2002) (enforcing waiver under *Lord* that had been implemented by the intermediate appellate court *sua sponte*, in the absence of any objection or argument based on Rule 1925 asserted by the Commonwealth as appellee).

We acknowledge the Commonwealth's concern that Appellant's waiver under Rule 1925(b) may have implications upon federal habeas corpus review under *Stone v. Powell*, 428 U.S. 465, 482, 96 S.Ct. 3037, 3046, 49 L.Ed.2d 1067 (1976) (conditioning the availability of federal habeas corpus merits review of a Fourth Amendment claim asserted by a state prisoner on whether the state provided an opportunity for full and fair litigation of the claim). The potential the Commonwealth will suffer some detriment on account of the waiver seems highly speculative, however. In this regard, if Appellant's waiver occurred by virtue of a knowing and intelligent decision on his part, it is unlikely that a federal court would attribute its consequences to a withholding by the state of an adequate opportunity to litigate claims. Conversely, if the waiver was without Appellant's approval and on account of a dereliction of counsel, Appellant should be entitled to a reinstatement of his right to direct appeal in the post-conviction review process. *See Commonwealth v. Halley*, 582 Pa. 164, 173, 870 A.2d 795, 801 (2005) (holding that "the failure to file a Rule 1925(b) statement on behalf of a criminal defendant seeking to appeal his conviction and/or sentence, resulting in a waiver of all claims asserted on direct appeal, represents the sort of actual or constructive denial of assistance of counsel falling within the narrow category of circumstances in which prejudice is legally presumed[, and] the remedy for the deprivation of the fundamental right to appeal is its restoration").[5] Thus, we do

5. In its brief, the Commonwealth suggested that the remedy of reinstatement of direct appellate rights under *Halley* should not apply in a death case, because the Court will automatically review the sufficiency of the evidence and guard against the impact of passion, prejudice, or any other arbitrary factor, *see* 42 Pa.C.S. § 9711(h). The circumstances, of the present case, however, fit within the express terms of

not believe that the Commonwealth's argument presents a sufficient basis to support the post-submission withdrawal of its objection and/or to cause us to depart from the directives of *Lord, Castillo,* and *Schofield* in this case.[6]

Finally, consistent with Section 9711(h) of the Judicial Code, 42 Pa.C.S. § 9711(h), and having reviewed the record presented, we are satisfied that the sentence of death was not the product of passion, prejudice, or any other arbitrary factor.

The judgments of sentence are affirmed, and the Prothonotary is directed to transmit the complete record of this case to the Governor of Pennsylvania within the timeframe designated by the General Assembly. *See* 42 Pa.C.S. § 9711(i).

Chief Justice CAPPY and Justices CASTILLE, NEWMAN, EAKIN and BAER join the opinion.

Justice BALDWIN did not participate in the consideration or decision of this case.

---

*Halley's* holding precisely, as all claims that Appellant advances are subject to the waiver under *Lord* (since Appellant presents no claim concerning the matters that are within the scope of this Court's automatic review).

It is also worth noting that, in confirming that the reinstatement remedy applies upon the unjustified failure to file a Rule 1925 statement, the express focus of *Halley* was upon the magnitude of the deprivation of the right to effective assistance of counsel. *See Halley,* 582 Pa. at 172–73, 870 A.2d at 801 (citing *Roe v. Flores–Ortega,* 528 U.S. 470, 482, 120 S.Ct. 1029, 1037, 145 L.Ed.2d 985 (2000)). The mere fact that there is closely limited review afforded in capital cases in the absence of any assistance or involvement by counsel at all (or argument on the part of a defendant proceeding *pro se* ) is therefore of little relevance to *Halley's* reasoning and holding.

6. The Commonwealth also asserts that there is a great need for guidance concerning the scope of the exclusionary rule in Pennsylvania in light of certain passages from *Commonwealth v. Grossman,* 521 Pa. 290, 555 A.2d 896 (1989), that the Commonwealth characterizes as *dictum.* For prudential reasons, however, courts will reach constitutional questions only when there are no other grounds upon which the matter may be resolved. *See Krenzelak v. Krenzelak,* 503 Pa. 373, 381, 469 A.2d 987, 990–91 (1983).