## Commonwealth v. Fuentes-Flores

2

*Craig W. Stedman, district attorney,* for Commonwealth.

*MaryJean Glick, senior assistant public defender,* for defendant.

ASHWORTH, *J.,* November 24, 2008—Pedro Fuentes-Flores has filed a direct appeal to the Superior Court of Pennsylvania from the judgment of sentence imposed on September 19, 2008. This opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

## I. BACKGROUND

On May 23, 2007, at 12:27 a.m., Officer Lisa Gehr of the East Lampeter Township Police Department was dispatched to the 400 block of Greenland Drive, East Lampeter Township, for a reported hit-and-run accident. (Notes of Testimony, Trial (N.T.T.), vol. II at 308-309.) There she met with a witness who described a red Jeep Cherokee as being the vehicle involved in the accident. The witness stated he recognized the Jeep as belonging to a neighbor and directed Officer Gehr to a male subject walking in front of 413 Greenland Drive as one of the people associated with the Jeep. (*Id.* at 311-12, 380-83.)

Officer Gehr approached the subject and identified him as the appellant, Pedro Fuentes-Flores. (N.T.T., vol. II at 315-16.) Officer Gehr was familiar with appellant from

previous encounters involving him and Karen Crowley. (*Id.* at 314-15.) Appellant Fuentes-Flores was observed talking on a cellular telephone, which he closed upon Officer Gehr's approach. (*Id.* at 316, 324-25, 333-34.) Officer Gehr asked appellant if she could speak with him. *(Id.)* Appellant responded, "My friend died." (*Id.* at 316, 328, 334.) Officer Gehr asked appellant if they could go inside to talk. (*Id.* at 316, 317, 335.) Appellant proceeded into the residence at 413 Greenland Drive, followed by Officer Gehr. (*Id.* at 317-18.)

Officer Gehr asked appellant whether "Karen" was home, to which appellant responded, "she's here." (N.T.T., vol. II at 318.) As Officer Gehr reached the top of the steps, she observed the victim, Karen Crowley, lying naked on the floor of the apartment. *(Id.)* The officer observed a pool of blood to the left side of the victim's head and what appeared to be a purple/black bruise on the left side of her ribs. (*Id.* at 327.) Ms. Crowley's skin was pale, gray and waxy. The victim was unresponsive and did not appear to be breathing. (*Id.* at 318-19.) Officer Gehr found no respirations or pulse. (*Id.* at 322.) Officer Gehr also observed an empty clear glass bottle positioned upright between the victim's upper legs. (*Id.* at 318-19.)

Detective Scott Eelman of the East Lampeter Township Police Department, and a member of the County Forensic Investigation Unit, arrived at the scene and examined the victim. (N.T.T., vol. III at 501-502, 513-14.) He noted burn marks on the victim's body and the carpet beneath her, specifically, the carpet between the left upper arm and the left side of Ms. Crowley's chest. (*Id.* at 528, 532.) There was soot transfer and discoloration of

the skin consistent with a burn on the left side of Ms. Crowley's chest. (N.T.T., vol. IV at 734.) The victim also had several burns in the inner aspect of her left upper arm. Finally, he observed a bottle labeled "Olive Oil" between the victim's legs and a second bottle labeled "Lemon Oil" near the victim's head. (N.T.T., vol. III at 528-29.) A strong odor of lemon emanated from Ms. Crowley's body. (N.T.T., vol. IV at 716.) There were obvious stab wounds to the victim's chest. (N.T.T., vol. III at 527.)

Detective Eelman further detected a strong odor of natural gas or propane in the apartment and discovered that the controls for the four surface burners of the stove and the oven were in the "on" position and that a hissing sound was coming from the range. (N.T.T., vol. III at 514-16.) There was no pilot light in the stove or oven. (*Id.* at 516.)

On May 23, 2007, appellant Fuentes-Flores gave a statement to the police in which he admitted stabbing the victim in the chest with a knife multiple times. (N.T.T., vol. IV at 784, 796.) He also admitted to pouring a liquid on her in order to accelerate a fire, which he started, after turning on the gas at the stove in an attempt to ignite a fire.

The victim's residence, 413 Greenland Drive, is located inside an apartment complex. (N.T.T., vol. II at 403; vol. IV at 665.) The apartment is on the second floor of a two-story building. (N.T.T., vol. III at 515.) There are eight apartments located in the same building as 413 Greenland Drive. The apartments below and next to 413 Greenland Drive exhibited signs of habitation on May 23, 2007, and a police canvas revealed that several apart-

ments were occupied on the night in question. (N.T.T., vol. II at 392-95, 399, 404.)

On May 24, 2007, Trooper Brian J. Herr, the Pennsylvania State Police Fire Marshal, examined the victim's body and her residence and concluded that the fire was intentionally ignited and, therefore, considered an incendiary or arson fire. (N.T.T., vol. IV at 660-61, 665, 670.) On May 24, 2007, the Lancaster County Forensic Pathologist, Wayne Ross M.D., conducted an autopsy on Karen Crowley and concluded that she was murdered and that her death was caused by stab wounds to her chest. (N.T.T., vol. III at 604.)

As a result of the investigation, appellant was arrested and charged with criminal homicide[1] in the stabbing death of Karen Crowley. He was also charged with arson and creating a risk of catastrophe[2] for intentionally starting a fire in the apartment by placing oil on the victim and turning on the gas burners and the gas oven and extinguishing the pilot light before igniting a fire.

Pursuant to Pa.R.Crim.P. 802, the Commonwealth filed a notice of intent to seek a sentence of death on July 19, 2007. Specifically, the Commonwealth believed it could prove two statutory aggravating circumstances: (1) the creation of a grave risk of death to another person in addition to the victim of the offense, 42 Pa.C.S. §9711(d)(7); and (2) a killing while in the perpetration of a felony, 42 Pa.C.S. §9711(d)(6).[3]

---

1. 18 Pa.C.S. §2502(a).

2. 18 Pa.C.S. §3301(a)(1)(I) and 18 Pa.C.S. §3302(b), respectively.

3. Section 9711 of the Crimes Code provides in relevant part:
*(d) Aggravating circumstances.*—Aggravating circumstances shall be limited to the following: . . .

On December 27, 2007, appellant filed a motion to quash those aggravating circumstances on the ground that no evidence existed to support them. Specifically, he asserted that the Commonwealth would not be able to offer prima facie evidence that the victim was alive at the time that appellant committed the offense of arson, the activity relied upon by the Commonwealth to support both aggravating circumstances. On January 18, 2008, the Commonwealth filed an answer to appellant's motion conceding the inapplicability of the aggravating circumstance set forth at section 9711(d)(6),[4] but contesting appellant's motion with respect to the applicability of the (d)(7) aggravator.

On February 15, 2008, the court entered an order granting appellant's motion in part and denying the mo-

---

"(6) The defendant committed a killing while in the perpetration of a felony.

"(7) In the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense." 42 Pa.C.S. §9711(d)(6) and (7).

4. The Commonwealth conceded that Pennsylvania case law has never defined the language "in perpetration of" found in section 9711(d) (6) to include activity that occurs *following* the killing. It further acknowledged that Pennsylvania's death penalty statute is to be strictly construed. See *Commonwealth v. Stallworth,* 566 Pa. 349, 373, 781 A.2d 110, 124 (2001) ("[I]n the context of a statute defining a category of persons against whom it is permissible to impose a sentence of death, such strict construction should militate in favor of the least inclusive interpretation.") (citing *Zant v. Stephens,* 462 U.S. 862, 877 (1983) (stating that aggravating factors must "genuinely narrow the class of death-eligible persons" in a way that reasonably "justifies the imposition of a more severe sentence on the defendant compared to others found guilty of murder")). Accordingly, given the fact that the Commonwealth conceded that the felony followed the killing, it was not "in perpetration of" the killing and this aggravator was not applicable in the instant case.

tion in part. Specifically, the motion was granted as to the aggravating circumstance set forth at section 9711(d)(6), but denied with respect to the applicability of the (d)(7) "grave risk of death" aggravator.

On March 4, 2008, appellant filed a motion for reconsideration of the court's order of February 15, 2008, and requested oral argument. Appellant's request was granted and oral argument was heard in chambers on April 3, 2008, and again on May 5, 2008. Following the filing of supplemental briefs by the parties, an opinion and order were entered on May 21, 2008, quashing notice of the (d)(7) "grave risk of death" aggravating circumstance and barring the imposition of a sentence of death in this case.[5]

---

5. Appellant argued that no evidence existed to support the (d)(7) aggravator, that is, that "*in the commission of the offense* the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense." 42 Pa.C.S. §9711(d)(7). (emphasis added) According to this statutory language, the grave risk of death to the other people in the multi-unit apartment building must have occurred "in the commission" of Karen Crowley's murder. The Commonwealth made the following three acknowledgments relative to the commission of the murder: (1) the victim died from the multiple stab wounds to her chest; (2) appellant could not have believed the victim was alive after the stabbings that he inflicted upon her; and (3) appellant's attempt to set a fire inside the apartment of the victim was intended "to conceal his crime" of murder. (See Commonwealth's memorandum of law in opposition to appellant's motion for reconsideration at 4, 5.) Given this posture of the case, we concluded that the activity that arguably endangered other persons occurred only *after* the commission of the murder. Hence, the arson did not occur "in the commission of the offense," *i.e.,* during Ms. Crowley's murder. The grave risk of harm to persons other than the intended victim was substantially removed in time from the commission of the murder. See *Commonwealth v. Paolello,* 542 Pa. 47, 80, 665 A.2d 439, 456 (1995) ((d)(7) aggravator is applicable only in those instances where "other persons are 'in close

On June 2, 2008, appellant filed a supplemental motion to suppress evidence in which he argued that a violation of his consular rights as a Mexican citizen under the Vienna Convention on Consular Relations in this case warranted the suppression of his statement. A hearing was held on this motion, as well as appellant's original January 2, 2008 omnibus pretrial motion, on June 4 and 5, 2008. Findings of fact were issued on June 10, 2008, which addressed the arrest of appellant, the statements made by him during his custodial interrogation, the search of appellant's residence, the search of appellant's person following his arrest, the search of his behavioral file at Lancaster County Prison, the seizure of blood from appellant, and his consular rights under the Vienna Convention on Consular Rights. Based upon these findings, appellant's two pretrial motions were denied.

On June 24, 2008, the Commonwealth filed a motion in limine seeking to introduce various photographs relative to all charges, including photographs depicting the decedent as found inside her home, as well as various injuries as photographed at the time of the autopsy. Appellant filed a response to this motion on June 27, 2008. The court met with counsel in chambers, on several occasions, to review the photographs and to discuss redacting and modifying them for trial. (N.T.T., vol. II at 268-71.) Immediately prior to the start of trial, the court

---

proximity' to the defendant 'at the time' of the murder, and due to that proximity are in jeopardy of suffering real harm."). See also, *Commonwealth v. Wholaver,* 588 Pa. 218, 903 A.2d 1178 (2006); *Commonwealth v. Randolph,* 582 Pa. 576, 873 A.2d 1277 (2005); *Commonwealth v. DeJesus,* 584 Pa. 29, 880 A.2d 608 (2005); *Commonwealth v. Treiber,* 582 Pa. 646, 874 A.2d 26 (2005); *Commonwealth v. Bolden,* 562 Pa. 94, 753 A.2d 793 (2000).

reviewed the limited number of redacted and modified photographs to be offered by the Commonwealth from the hundreds in the file and determined that with respect to those select few photographs, "the probative value outweigh[ed] the prejudicial effect, given the burden of proof that the Commonwealth ha[d] and the issues in this case." (*Id.* at 271.)

The case ultimately proceeded to a jury trial on July 9, 2008, at the conclusion of which appellant was found guilty of first-degree murder, arson and risking a catastrophe. A pre-sentence investigation report was ordered.

At the sentencing hearing on September 19, 2008, the court first imposed the mandatory sentence of life without parole on the first-degree murder conviction. With respect to the arson conviction, the court considered the pre-sentence investigation report before imposing a consecutive sentence of three to 10 years' incarceration. This sentence was in the standard range of the Pennsylvania Sentencing Guidelines. The offense of risking catastrophe merged for sentencing purposes with the arson conviction. Appellant was also required to pay restitution in the amount of $10,943.65, plus costs. No post-sentence motions were filed. Appellant was represented at his trial and sentencing hearing by the office of the public defender, specifically, Douglas A. Conrad, Esquire.

On October 17, 2008, appellant filed a timely appeal to the Superior Court of Pennsylvania from the judgment of sentence imposed on September 19, 2008. Counsel was directed to identify the matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Pro-

cedure 1925(b). On November 10, 2008, counsel filed a Rule 1925(b) statement claiming trial court error with regard to the admission of certain photographs of the victim, Karen Crowley. The Commonwealth filed a response to appellant's statement on November 19, 2008.

## II. DISCUSSION

Appellant asserts generally, without specifying a certain photograph or photographs, that the court erred by admitting inflammatory and prejudicial color photographs of the murder victim, Karen Crowley.[6] In support of his position, appellant argues that "[a]s the manner of Ms. Crowley's death was not contested, these photographs were of minimal relevance." (See statement of errors at ¶1.)

Our Supreme Court has held that "[t]he admissibility of photos of the corpse in a homicide case is a matter within the discretion of the trial court, and only an abuse of discretion will constitute reversible error." *Commonwealth v. Robinson,* 581 Pa. 154, 224, 864 A.2d 460, 502 (2004) (quoting *Commonwealth v. Rush,* 538 Pa. 104, 111, 646 A.2d 557, 560 (1994)). See also, *Commonwealth v. Brown,* 551 Pa. 465, 484, 711 A.2d 444, 453 (1998). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill will, or such lack of

---

6. Although appellate counsel has not seen the actual photographs admitted into evidence at the trial in this matter, she is "objecting to all photographs of the victim which were admitted into evidence." (See statement of errors at ¶1, n.1.)

support so as to be clearly erroneous." *Commonwealth v. Dengler,* 586 Pa. 54, 65, 890 A.2d 372, 379 (2005). Evidence is relevant, and therefore admissible, if it logically tends to establish a material fact in the case, or supports a reasonable inference or presumption regarding the existence of a material fact. *Commonwealth v. Robinson,* 554 Pa. 293, 305, 721 A.2d 344, 350 (1998).

It is well settled that photographs of the victim of a homicide are not per se inadmissible. *Robinson,* 581 Pa. at 223, 864 A.2d at 501. In *Commonwealth v. Marinelli,* 547 Pa. 294, 690 A.2d 203 (1997), the Supreme Court promulgated a two-step test to determine the admissibility of photographs of a murder victim, which by their very nature can be unpleasant, disturbing, and even brutal:

"First, a court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors. If an inflammatory photograph is merely cumulative of other evidence, it will not be deemed admissible." *Id.* at 321, 690 A.2d at 216 (citing *Commonwealth v. Chester,* 526 Pa. 578, 591-92, 587 A.2d 1367, 1373-74 (1991)).

Appellant argues that the photographs admitted by the Commonwealth in the instant matter served only to inflame the passions of the jury, that the prejudicial effect of the photographs far outweighed their evidentiary value, and that the depiction was needlessly cumulative.

The murder of Karen Crowley was truly a horrific crime.[7] Yet, that is the crime for which appellant was on trial, and it is the crime for which appellant was convicted. The bloody photographs of Karen Crowley are indeed distasteful, as one would expect in a brutal murder. However, these photographs were highly probative concerning the element of specific intent to kill.

Our Supreme Court has repeatedly recognized that photographic images of a homicide victim are often relevant to the intent element of the crime of first-degree murder. *Commonwealth v. Pruitt,* 597 Pa. 307, 327, 951 A.2d 307, 319 (2008) (citing *Commonwealth v. Solano,* 588 Pa. 716, 735, 906 A.2d 1180, 1191 (2006) and *Commonwealth v. Tharp,* 574 Pa. 202, 222, 830 A.2d 519, 531 (2003)). "In some cases, the condition of the victim's body may be the *only* evidence of the defendant's intent." *Id.* (citing *Commonwealth v. McCutchen,* 499 Pa. 597, 603, 454 A.2d 547, 549 (1982) (emphasis in original) (depiction of the victim's deep and gaping injuries "was essential as evidence of intent beyond mere infliction of bodily injury.")). A trial court may not sanitize the evidence and, thus, deprive the Commonwealth of the opportunity to prove intent to kill beyond a reasonable doubt. See *id.* Thus, the photographs were relevant evidence as to appellant's intent, an element that was very much in contention at trial.[8]

---

7. Dr. Ross, the forensic pathologist, testified that Karen Crowley was stabbed 11 times with multiple weapons. (N.T.T., vol. III at 586-87, 614.)

8. In both the opening and closing statements, after acknowledging that appellant killed Karen Crowley, defense counsel argued strenuously that appellant did not have the specific intent to kill and should, accordingly, be acquitted of first-degree murder. (N.T.T., vol. II at 306-307; vol. IV at 808-10, 814-15.)

Moreover, the photographs in the instant case were relevant to proving the facts and elements of the arson offense. The defense contested the arson, and the photographs clearly showed the extent of the burns, the spread of the fire, as well as other evidence related to the burning. Additionally, they showed the area in which appellant committed the murder and they corroborated Dr. Ross' testimony and assisted him in conveying the results of the autopsies. (N.T.T., vol. III at 584-89.) The fact that a forensic pathologist has conveyed to the jury, in appropriate clinical language, the nature of the victim's injuries and the cause of death does not render photographic evidence merely cumulative, as suggested by appellant. See *Pruitt,* 951 A.2d at 319 (citing *McCutchen,* 499 Pa. at 603, 454 A.2d at 550). "The meaning of words, particularly the clinical words employed by a pathologist, can be properly and usefully illustrated and explained to a lay jury via photographic images." *Id.* Thus, appellant's argument that the photographs were merely cumulative of the testimony of the pathologist is meritless.

There was no abuse of discretion in this court's analysis of, and decision regarding, the photographs. The photographs of the victim were necessary to portray accurately the crime scene, and the nature and extent of the victim's injuries. They were also necessary to aid the jury in determining the manner of death and whether the killing was intentional. Additionally, the photographs were culled so as to not be cumulative and were relevant to proving the facts and elements of the arson offense.

As the Supreme Court explained in *Rush, supra:*

"A criminal homicide trial is, by its very nature, unpleasant, and the photographic images of the injuries

inflicted are merely consonant with the brutality of the subject of inquiry. To permit the disturbing nature of the images of the victim to rule the question of admissibility would result in exclusion of all photographs of the homicide victim, and would defeat one of the essential functions of a criminal trial, inquiry into the intent of the actor. There is no need to so overextend an attempt to sanitize the evidence of the condition of the body as to deprive the Commonwealth of opportunities of proof in support of the onerous burden of proof beyond a reasonable doubt. Further, the condition of the victim's body provides evidence of the assailant's intent, and, even where the body's condition can be described through testimony from a medical examiner, such testimony does not obviate the admissibility of photographs." *Robinson,* 581 Pa. at 224, 864 A.2d at 502 (quoting *Rush,* 538 Pa. at 111, 646 A.2d at 560).

After viewing the photographs in camera, I held that they were each admissible. (N.T.T., vol. II at 270-71.) While I acknowledged that some of the photographs were graphic and could be disturbing (see for example, *id.* at 271), I nonetheless held that they were admissible because they were probative of the vicious nature of the killing and the arson charge. The probative value outweighed any prejudicial effect they may have had on the jury. *(Id.)* Without these photographs, it would have been impossible for a reasonable jury to fully grasp the severity of the wounds inflicted upon this victim, and the evidence surrounding the arson offense.

Accordingly, there was no abuse of discretion in the admission of the contested exhibits and appellant is entitled to no relief.

## III. CONCLUSION

For the reasons set forth above, appellant's judgment of sentence should be affirmed and his appeal dismissed.

Accordingly, we enter the following:

### ORDER

And now, November 24, 2008, the court hereby submits the foregoing opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.