J-S06021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAI-MICHAEL HUDSON | : | |
| | : | |
| Appellant | : | No. 898 MDA 2022 |

Appeal from the Judgment of Sentence Entered April 20, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0004098-2020

BEFORE:   STABILE, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                **FILED: MAY 4, 2023**

Appellant Jai-Michael Hudson appeals from the judgment of sentence imposed after a jury convicted him of strangulation and simple assault.[1] Appellant claims that the trial court erred in instructing the jury regarding the elements of strangulation.  Appellant also challenges sufficiency and the weight of the evidence.  We affirm.

The trial court summarized the facts of this case as follows:

The Commonwealth presented the testimony of Officer Stephen Staats, who was working as a patrol officer for the Lower Paxton Township police department on August 29, 2020.  He was dispatched to 31 Beacon Drive at 10:03 p.m. on that date after a 911 call was made regarding a domestic dispute.  Officer Staats testified that when he arrived at the home, the victim, Pamelita Roberts, opened the door.  He noticed that she was visibly upset

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2718(a)(1) and 2701(a)(1), respectively.

and crying, and he observed a scratch on her cheek that was bleeding. Upon entering the home, he observed the victim's young son in the living room. The young boy was visibly scared, and it appeared that he had been crying.

The victim relayed to Officer Staats that earlier in the day she had ended her relationship with Appellant. She further explained that the two shared a joint banking account and she left a check for Appellant under the door mat of the house for $3,500.00. The victim was under the impression Appellant had already retrieved the check when she was awoken by her son, their barking dog and knocking on the front door of the home. She told Officer Staats that upon answering the door, Appellant put his hands around her neck and threw her to the ground. Once on the ground, Appellant put his hands around the victim's neck for approximately 60 seconds and she was unable to breathe. During the interview, the victim told Officer Staats she thought she was going to die multiple times. Officer Staats also [audio-]recorded the victim's statement regarding the events of the incident.

[At trial, t]he Commonwealth called [the victim,] who stated that she was intoxicated at the time of the incident. Under questioning by the [Commonwealth], she admitted that she told the police that the Appellant strangled her shortly after the incident. [The victim also testified that her statements to the police were not accurate because she was intoxicated at the time, and she denied that Appellant had strangled her. Further, she stated that she instructed her son to call the police because she was upset that Appellant was leaving her.]

The Commonwealth also presented the testimony of Roxanne Snider, a detective with the Dauphin County criminal investigation division. Detective Snider testified that she spoke to a witness in this matter, Zhaunte Crenshaw, who indicated that the victim and Appellant were still involved in a relationship. Ms. Crenshaw further relayed to Detective Snider that she was unsure how often the two were seeing each other while the case was going through the court system.

Finally, the Commonwealth also introduced the recording of the 911 call made by the victim's 10-year-old son[, during which the victim also spoke to the 911 dispatcher at the time of] the August 29, 2020 incident and pictures taken of the victim shortly after the incident.

Trial Ct. Op., 8/24/22, at 3-5 (unpaginated) (citations omitted and formatting altered).

We note that on the second day of trial, the trial court held a brief conference with counsel. Thereafter, the trial court indicated it would adopt the Commonwealth's proposed jury instruction regarding the strangulation count and Appellant did not object. N.T. Trial, 2/1/22, at 80. The trial court then instructed the jury that physical injury is not an element of strangulation, and that the lack of physical injury is not a defense to the offense of strangulation. N.T. Trial, 2/2/22, at 100-01.[2] Appellant did not object after the trial court completed its jury instructions. *Id.* at 107.

During its deliberations, the jury submitted a request for the trial court to instruct the jury again on the applicable law. *Id.* at 108-09. The trial court provided supplemental instructions and referenced the intent necessary to commit murder when explaining *mens rea*. *Id.* at 110. Additionally, the trial court repeated its previous instructions regarding the offense of strangulation

---

[2] We note that the trial notes of testimony from February 2, 2022 are not included as part of the certified record, but they are included as part of Appellant's reproduced record. The Commonwealth did not object to the accuracy of these notes of testimony. Because "their veracity is not in dispute, we rely on the copy contained within the reproduced record." *See C.L. v. M.P.*, 255 A.3d 514, 518 n.3 (Pa. Super. 2021) (*en banc*); *see also Commonwealth v. Brown*, 52 A.3d 1139, 1145 n.4 (Pa. 2012) (holding that an appellate court can consider a document that only appears in the reproduced record when "the accuracy of the reproduction has not been disputed" (citation omitted)).

and physical injury, or the lack thereof. ***Id.*** at 111. Appellant did not object to any portion of the trial court's instructions. ***Id.*** at 119.

Ultimately, the jury found Appellant guilty of strangulation and simple assault. The trial court deferred sentencing for the preparation of a pre-sentence investigation (PSI) report. ***Id.*** at 123. On April 20, 2022, the trial court sentenced Appellant to a mandatory minimum sentence of ten to twenty years' incarceration for strangulation as a second-strike offender[3] and imposed no further penalty for simple assault. ***See*** N.T. Sentencing Hr'g, 4/20/22, at 10-11. Appellant filed a timely post-sentence motion challenging the weight of the evidence, which the trial court denied.

Appellant subsequently filed a timely notice of appeal.[4] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues for our review, which we reorder as follows:

> 1. Whether the trial court erred in instructing the jury regarding the lack of physical injury, which was confusing and prejudicial.

---

[3] ***See*** 42 Pa.C.S. § 9714(a)(1), (a.1).

[4] In his notice of appeal, Appellant purports to appeal from "the conviction of February 2, 2022, judg[]ment of sentence[] entered on April 20, 2022, and the order denying post-sentence motion entered in this matter on . . . May 23, 2022." Notice of Appeal, 6/20/22 (some formatting altered). It is well-established that "in criminal cases appeals lie from judgment of sentence rather than from the verdict of guilt, . . ." ***Commonwealth v. O'Neill***, 578 A.2d 1334, 1335 (Pa. Super. 1990) (citations omitted). Therefore, we have amended the caption accordingly. ***See Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*).

2. Whether the trial court committed an abuse of discretion by instructing the jury on the elements of murder in the closing charge, which was confusing and prejudicial.

3. Whether the trial court erred in accepting the jury's verdict where the evidence presented was insufficient to establish the elements of strangulation.

4. Whether the trial court committed an abuse of discretion in accepting the jury's verdict which was so contrary to the weight of the evidence which established the [victim] was intoxicated when she spoke with the police and recanted her initial allegation.

Appellant's Brief at 4.[5]

### Jury Instructions

We address Appellant's first two issues regarding the jury instructions together. First, Appellant argues that the trial court erred in instructing the jury that it is not a defense to the charge of strangulation that the victim was not physically injured. *Id.* at 14-15. Appellant contends that this instruction was prejudicial because it created confusion regarding whether the jury could consider the victim's lack of physical injuries when assessing her credibility. *Id.* at 16-17.

Second, Appellant argues that the trial court erred by using murder as an example when defining *mens rea* after the jury requested supplemental

---

[5] We note that in his Rule 1925(b) statement, Appellant also argued that the evidence was insufficient to convict him of simple assault. *See* Rule 1925(b) Statement, 7/19/22, at 2 (unpaginated). Appellant has not raised this claim in his appellate brief; therefore, Appellant has abandoned this issue on appeal. *See* Pa.R.A.P. 2116(a), 2119(a); *see also Commonwealth v. McGill*, 832 A.2d 1014, 1018 n.6 (Pa. 2003) (finding waiver where the appellant abandoned claim on appeal).

instructions. *Id.* at 11-13. Appellant contends that this instruction referencing murder was prejudicial because Appellant had been charged with assault-related offenses. *Id.* at 13-14. Appellant also claims that this instruction was confusing as it only defined the *mens rea* of intentionally and not knowingly. *Id.* at 13.

Before we address the merits of Appellant's claims, we must determine whether he has preserved them for appeal. This Court may raise this issue of waiver *sua sponte*. *See Commonwealth v. Wholaver*, 903 A.2d 1178, 1184 (Pa. 2006). "[T]he applicability of waiver principles . . . is a question of law, over which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Barbour*, 189 A.3d 944, 954 (Pa. 2018) (citations omitted).

"Issues not raised before the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). It is well-established that "[a] specific and timely objection must be made to preserve a challenge to a particular jury instruction. Failure to do so results in waiver." *Commonwealth v. Olsen*, 82 A.3d 1041, 1050 (Pa. Super. 2013) (citation omitted).

Here, the record reflects that Appellant did not object to the jury instructions that he seeks to challenge on appeal. Indeed, Appellant did not raise any objections at the charging conference, during or after the trial court's initial jury instructions, nor when the trial court provided supplemental instructions to the jury during deliberations. *See* N.T. Trial, 2/2/22, at 107,

119. Therefore, Appellant has waived his challenges to the jury instructions on appeal. *See Olsen*, 82 A.3d at 1050; Pa.R.A.P. 302(a). Accordingly, no relief is due.

## Sufficiency of the Evidence

Appellant next argues that the evidence was insufficient to establish the elements of strangulation. Appellant's Brief at 19-21. Appellant contends that there was no physical evidence of any strangulation and that the victim testified that Appellant did not place his hand on her throat, nor did he impede her ability to breathe. *Id.* at 20-21 (citing N.T. Trial, 2/1/22, at 49).

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part[,] or none of the evidence.
>
> Furthermore, in evaluating the sufficiency of the evidence, we do not review a diminished record. Rather, the law is clear that we

are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct.

*Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa. Super. 2005) (citations omitted and formatting altered)); *see also Commonwealth v. Mikitiuk*, 213 A.3d 290, 300 (Pa. Super. 2019) (stating that "[a] successful sufficiency-of-the-evidence claim requires discharge" (citation omitted)).

Further, "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony can address and, in fact, addresses, every element of the charged crime." *Commonwealth v. Johnson*, 180 A.3d 474, 481 (Pa. Super. 2018). Additionally, the prior inconsistent statements of a witness who testifies at trial, are sufficient to sustain a conviction "as long as the prior inconsistent statements, taken as a whole, establish every element of the offense charged beyond a reasonable doubt, and the finder-of-fact could reasonably have relied upon them in arriving at its decision." *Brown*, 52 A.3d at 1171.

Lastly, any challenge to the credibility or reliability of the witnesses goes to the weight, not the sufficiency, of the evidence. *See Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014) (explaining that a claim that the Commonwealth's evidence lacked credibility "attacks the weight, rather than the sufficiency, of the evidence" (citation omitted)).

The Crimes Code defines strangulation, in relevant part, as follows:

**(a) Offense defined.**—A person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by:

(1) applying pressure to the throat or neck . . .

\*    \*    \*

**(b) Physical injury.**—Infliction of a physical injury to a victim shall not be an element of the offense.  The lack of physical injury to a victim shall not be a defense in a prosecution under this section.

\*    \*    \*

**(d) Grading.**—

\*    \*    \*

(2) A violation of this section shall constitute a felony of the second degree if committed:

(i) against a family or household member as defined in 23 Pa.C.S. § 6102 (relating to definitions)[.[6]]

18 Pa.C.S. § 2718(a)(1), (b), (d)(2)(i).

Here, at trial, the Commonwealth played a recording of the 911 call that the victim's son made on the night the incident occurred.  **See** N.T. Trial, 2/1/22, at 32-33; Commonwealth's Ex. 1.  During the call, the victim told the dispatcher that her boyfriend, Appellant, had beaten her up and almost choked her to death.  **See id.**  Officer Staats testified that he arrived at the victim's apartment minutes after the 911 call and made an audio recording of the victim's statement.  **See** N.T. Trial, 2/2/22, at 5-7, 11-12; Commonwealth's Ex. 2.  At that time, the victim explained that after she opened the door for Appellant, he placed his hands around the victim's neck and threw her to the floor.  **See** Commonwealth's Ex. 2; **see also** N.T. Trial, 2/2/22, at 10.  The

---

[6] The term "family or household members" includes, among others,  "current or former sexual or intimate partners . . . ."  23 Pa.C.S. § 6102(a).

victim also said that Appellant had his hands around her neck for around sixty seconds, and during that time, she could not breathe. **See** Commonwealth's Ex. 2; **see also** N.T. Trial, 2/2/22, at 10. The victim repeatedly said that she believed she was going to die when Appellant was choking her. **See** Commonwealth's Ex. 2; **see also** N.T. Trial, 2/2/22, at 10-11.

In its Rule 1925(a) opinion, the trial court addressed Appellant's sufficiency-of-the-evidence claim as follows:

> Officer Staats credibly testified that the victim stated that Appellant placed his hands around her throat, and she was unable to breathe for approximately 60 seconds. Officer Staats also observed injuries to the victim, which were also preserved in photographs. The 911 call by the victim's son strongly indicated the Appellant assaulted [the victim]. Accordingly, there was sufficient evidence to satisfy the elements of strangulation . . . .

Trial Ct. Op. at 6 (unpaginated).

Based on our review of the record, and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that the evidence was sufficient to sustain Appellant's conviction for strangulation. **See Gray**, 867 A.2d at 567.

At trial, the Commonwealth introduced evidence of the victim's initial statements in which she described how Appellant had placed his hands around her throat, forced her to the floor, and that she was unable to breathe during that time. Although the victim recanted her prior statements at trial, the jury was free to believe, all, part, or none of the evidence. **See Brown**, 52 A.3d at 1171; **Gray**, 867 A.2d at 567. Therefore, in light of the totality of all the

evidence presented by the Commonwealth, as verdict winner, we agree with the trial court that there was sufficient evidence to sustain Appellant's conviction for strangulation. **See** 18 Pa.C.S. § 2718; **see also Brown**, 52 A.3d at 1171 (holding that a witness's prior inconsistent statements are sufficient to sustain a conviction so long as the statements "taken as a whole, establish every element of the offense charged beyond a reasonable doubt"). Further, because physical injury is not an element of strangulation, the presence or absence of physical injuries on the victim does not affect our conclusion. **See** 18 Pa.C.S. § 2718(b).[7] Therefore, Appellant is not entitled to relief on this claim.

## Weight of the Evidence

In his last issue, Appellant argues that the verdict was against the weight of the evidence. Appellant's Brief at 17-19. Specifically, Appellant notes that at trial, the victim testified that Appellant did not strangle her. **Id.** at 18 (citing N.T. Trial, 2/1/22, at 49, 54). Additionally, the victim testified that she was intoxicated on the night of August 29, 2020, and that she

---

[7] Nevertheless, we note that the record belies Appellant's claim that the victim did not have physical injuries. The victim did not have any marks or bruises on her throat. **See** N.T. Trial, 2/1/22, at 56-57, 74; N.T. Trial, 2/2/22, at 23. However, the victim had scrapes on both of her knees and a scratch on her face. **See** N.T. Trial, 2/1/22, at 58-59; N.T. Trial, 2/2/22, at 13-16; Commonwealth's Ex. 3, 4. Further, the victim told the 911 dispatcher that she was injured but that she could handle her injuries at home. **See** Commonwealth's Ex. 1; **see also** N.T. Trial, 2/2/22, at 9, 23-24 (Officer Staats testified that the victim declined aid from paramedics because she is a nurse and could treat her own injuries).

- 11 -

instructed her son to call the police because she was angry at Appellant for leaving her. *Id.* (citing N.T. Trial, 2/1/22, at 42, 49). Appellant also refers to Crenshaw's testimony that the victim becomes belligerent when she drinks excessively, and the victim had been drinking heavily earlier on the day of the incident. *Id.* (citing N.T. Trial, 2/2/22, at 42). Lastly, Appellant asserts that the victim did not have any physical injuries. *Id.* (citing N.T. Trial, 2/2/22, at 23). Therefore, Appellant concludes that the verdict shocks one's sense of justice. *Id.* at 19.

In reviewing a weight claim, this Court has explained:

The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (citations and quotation marks omitted); *see also Commonwealth v. Cousar*, 928 A.2d 1025, 1036 (Pa. 2007) (holding that an appellate court reviews a trial court's denial of a weight of the evidence claim for an abuse of

discretion and stating that "the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings" (citation omitted)).

When a weight claim "is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." *Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009) (citation omitted).

Here, the trial court addressed Appellant's weight-of-the-evidence claim as follows:

> [T]he jury's guilty verdicts were not against the weight of the evidence. Officer Staats credibly testified that moments after the August 29, 2020 incident, the victim stated that Appellant placed his hands around her neck for approximately 60 seconds and she was unable to breathe. The victim also told Officer Staats multiple times during his interview of her, that she thought she was going to die. Finally, Officer Staats observed visible injuries to the victim's face. The jury also viewed pictures of the victim's injuries and listened to the 911 recording from the night of the incident. The 911 call made by the young boy was stunningly compelling as he related to the dispatcher what Appellant did to his mother.
>
> While [the victim] offered testimony during the trial that she was drunk during the incident and she did not recall what happened, the observations Officer Staat[s] made shortly after the incident were credible and reliable. The victim's testimony was not credible, especially in light of the fact that testimony was offered suggesting that the victim and Appellant were still romantically involved. Because the fact finder found the victim's testimony at trial to be not credible, and the verdicts were supported by the credible evidence of record, we reject Appellant's argument.

Trial Ct. Op. at 5 (unpaginated).

Based on our review of the record, we discern no abuse of discretion by the trial court in rejecting Appellant's weight claim. ***See Gonzalez***, 109 A.3d at 723. The jury, as fact-finder, was entitled to make credibility determinations concerning the victim's trial testimony and her prior statements, and was free to believe all or part or none of the witness testimony, in addition to deciding which evidence presented at trial has greater weight. ***See id.***; ***see also Gibbs***, 981 A.2d at 282. Accordingly, Appellant is not entitled to relief on this claim. For these reasons, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/04/2023