J-A07033-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LINDA M. GOETZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL A. & ANN WILLIAMS | : | No. 1175 MDA 2017 |

Appeal from the Judgment Entered July 26, 2017
In the Court of Common Pleas of Adams County Civil Division at No(s):
2013-SU-0000610

BEFORE:   PANELLA, J., OLSON, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED APRIL 25, 2018**

Appellant Linda M. Goetz (hereinafter "Linda") appeals from the judgment entered on July 26, 2017, following a non-jury verdict in the Court of Common Pleas of Adams County confirming the default judgment entered on May 5, 2015, on her quiet title action in favor of Michael A. Williams (hereinafter "Michael").[1]  As Appellant has failed to submit an appropriate

---

[1] In accordance with a *per curiam* Order of this Court entered on April 29, 2015, the trial court entered judgment in favor of Michael and against Linda as directed in its prior order of March 24, 2015.  However, the Order was not entered on the docket until March 25, 2015.  Therein, the trial court denied Linda's motion for post-trial relief filed following its Order entered on December 15, 2014.  In its December 15, 2014, Order, the trial court found Linda had failed to carry her burden of proof and entered judgment in favor of Michael and against Linda on Linda's action to quiet title and all other claims set forth in her Amended Complaint wherein she had sought to nullify the mortgage in question to clear title to the subject real estate.   In addition, Linda had entered a default judgment against Michael's Mother, Ann Williams, thereby extinguishing Ms. Williams' mortgage against the subject property.

---

*   Former Justice specially assigned to the Superior Court.

concise statement of errors complained of on appeal as required by Pa.R.A.P. 1925(b), we find all her arguments are waived on appeal. Accordingly, we affirm the judgment.

This Court set forth the relevant facts and procedural history in our prior memorandum decision as follows:

> This dispute has its roots in the protracted divorce between Linda and her ex-husband, Robert Goetz, who is Michael's uncle. The following summary of those divorce proceedings are taken from a master in equitable distribution's report.
>
> > The parties met in 1985; they began living together in 1987. They were married on April 26, 1991 in Frederick County, Maryland. The marriage was the second for Husband and the third for Wife. The parties separated during the marriage several times, the longest of which was December 1996 through December 2000. … The parties separated for the final time in September 2004. The instant Complaint in Divorce was filed by Wife on March 21, 2005 ….
> >
> > The central dispute in this matter has been the determination of what constitutes marital assets. Husband claims that all real property and assets are his sole property; Wife claims that all real property and assets are marital property. The issue arises from documents entitled "Prenuptial Agreement" and "Postnuptial Agreement" signed by the parties, and equitable considerations raised by the parties' [sic], and particularly Husband's actions and statements in prior matters before various courts, including the first divorce …; a property claim advanced by the parties … to avoid a Pennsylvania Department of Environmental Protection lien; and a bankruptcy petition filed by Husband in 2005 after the parties' final separation. … The Opinion and Order of the [trial court] dated August 15, 2008, … affirmed the validity of the Prenuptial Agreement and the invalidity and unenforceability of the Postnuptial Agreement. … Despite the above, Husband continues to claim that by virtue of the Postnuptial Agreement, Wife

- 2 -

has no interest in any real property or the proceeds of the public auction of business related joint property and at subsequent Master's hearings spent considerable time introducing evidence intended to show ownership of assets pre-dated the marriage.

On October 15, 2008, Husband having failed to pay alimony pendente lite arrearages and counsel fees under Orders of Court … in the amount of $57,496.96, Wife obtained a judgment and filed a Writ of Execution. A Sheriff's sale of construction equipment and salvage materials to satisfy the judgment was scheduled for February 26, 2009. Husband requested Wife's cooperation to obtain funds against marital property at 3380 Chambersburg Road to forestall the sale. Wife cooperated in signing four mortgages. Husband obtained $35,000.00 against three of those mortgages, but did not obtain the remaining $25,000 against the fourth mortgage. Husband did not pay any amount to Wife. [As a result] Wife filed her Fourth Petition for Special Relief asking for [a public auction instead of a sheriff's sale,] which was scheduled for Saturday, April 18, 2009.

Report and Recommendation of Master, 1/26/11, at 1-3.[2] Of the $35,000 borrowed by Robert against 3380 Chambersburg Road, Michael provided $25,000.

Then-counsel for Robert, John A. Wolfe, Esq., deposited the checks in an escrow account. At some point after that, Attorney Wolfe withdrew from the case, and Husband retained a new lawyer, Richard K. Konkel, Esq. On April 17, 2009, Attorney Konkel disbursed the proceeds of the escrow account created by Attorney Wolfe to Robert.

At the auction on April 18, 2009, Michael signed a bid agreement with the auctioneer, Wolfe Industrial Auctions, Inc.[3] Paragraph 1 of the agreement provided that "[a]ll prospective buyers must register and receive a bidder's card." Paragraph 8 of the document provided that in the event that the purchase price was not paid, the auctioneer was entitled to recover any losses from the buyer, including attorney's fees and court costs. At the bottom of the page, Michael's signature is identified as the signature of buyer. The number 60 is handwritten at the top of the page.

Michael's testimony regarding what happened at the auction is dependent upon the circumstances under which his testimony

was taken and contradictory in certain aspects. The consistent aspects of his testimony are that he was bidder #60 at the auction. Furthermore, Michael admitted that Robert performed the bidding under bid card #60, and that Robert, and not he, had provided the funds to pay for the purchase price of all items purchased under bid card #60. Finally, it is undisputed that Robert brought $35,000 to the auction and used it towards the purchase price of the assets purchased under bid card #60.

The inconsistencies in Michael's statements under oath concern the reasons why Robert was the person making the bids at auction. When he testified on July 8, 2010, during the divorce case between Linda and Robert, Michael stated that Robert performed the bidding because "[h]e knew the history of all his equipment much more extensive[ly] than I did." N.T., 7/8/10, at 1815.[4] As far as the reason why the items were purchased, Michael testified, "I was going to resell the equipment." *Id*., at 1815; 1829-1830. After the conclusion of the auction, Michael testified that Robert told him that he would pay for the purchases because Robert "was going to get my $25,000 back." *Id*., at 1835.

In contrast, during the non-jury trial in the present case on October 28, 2014, Michael testified that he did not purchase anything at the auction. *See* N.T., 10/24/14, at 59. Furthermore, he testified that Robert purchased all of the items under bid card #60 and did not give Williams any of the items purchased. *See id*.

Approximately eight months later, Michael recorded the mortgage on 3380 Chambersburg Road. The property was later sold pursuant to a sheriff's sale to satisfy Linda's claims against Robert.

The central dispute in this current litigation is the ongoing validity of the mortgage, executed by Robert and Linda, against 3380 Chambersburg Road and held by Michael. Of relevance to the current appeal, Linda argues that Robert had in fact paid off the $25,000 loan to Williams on the date of the auction by paying for the purchases.[5] The trial court found that there was no evidence to support a finding that Robert had satisfied the loan. We disagree, and conclude that pursuant to the stipulations agreed to by Williams, there is an outstanding question regarding the arrangements between Michael and Robert at and after the auction.

---

[2] As Michael was not a party to the divorce proceeding, none of the factual findings from that proceeding can be held against him. Linda submitted the Masters' Reports as exhibits in the non-jury

trial. However, the trial court sustained Michael's objections to their admission. We utilize the reports merely to summarize the factual and procedural history to provide context to Linda's claims in this matter in a manner consistent with the factual record developed in the trial court.

[3] The record does not indicate any relationship between Attorney Wolfe and the auctioneer.

[4] Michael argues, on appeal, that this transcript was not admitted at trial. However, when Linda was questioned regarding Michael's prior testimony, the trial court stated "The [c]ourt will read the transcript." N.T., 10/28/14, at 18. Michael did not object, and the transcript was not one of the exhibits the trial court explicitly excluded from admission at the close of Linda's evidence.

[5] Linda propounded several theories for relief in her complaint. As we conclude that a remand is necessary on this issue, we need not catalogue the other theories.

*Goetz v. Williams*, No. 692 MDA 2015, unpublished memorandum at 1-6

(Pa.Super. filed March 7, 2016).

This Court went on to list numerous stipulated facts and indicated that

we were "concerned solely with the application of law" thereto. *Id*. at 6.

Specifically, we explained:

> As noted previously, the Terms of Sale document provides that Michael, as purchaser, was liable for the purchase price due for any asset purchased under his bid number. Furthermore, the attached transaction list referenced in stipulation 30 indicates that Michael, as purchaser, was liable for a total purchase price at auction of $61,240.
>
> Under these stipulated facts, Michael was the purchaser at auction, and liable for the purchase price to Wolfe Industrial Auctions. *See Graver v. O'Reilly*, 55 Pa. Super. 505, at *3 (1913). Robert's act in settling Michael's account after the auction was in fact income to Michael in the form of retirement of the debt Michael owed Wolfe Industrial Auctions. *See*, *e.g.*, *United States v. Centennial Savings Bank FSB*, 111 S.Ct. 1512, 1518 (U.S. 1991) ("if the taxpayer is thereafter released from his obligation

to repay [a debt,] the taxpayer enjoys a net increase in assets equal to the forgiven portion of the debt"); 23 Pa.C.S.A. § 4302 (providing that in support issues, discharge of indebtedness is included as income for the debtor). Furthermore, as the party signing the Terms of Sale and identified as the buyer under bid card #60, the assets purchased at the auction were transferred to Michael's ownership as a matter of law as soon as the bid was paid. **What happened next is to be the issue on remand**.

There is conflicting evidence, from Michael himself, regarding what happened to the assets. If Michael's prior testimony is credited, he retained the assets for later resale for his own benefit. Furthermore, in his earlier testimony, Michael suggested that this discharge of his debt was related to his $25,000 loan to Robert. If this testimony is credited, the mortgage has been discharged.

On the other hand, if Michael's recent testimony is credited, Robert used Michael's name, and not his own, at the auction to purchase items for himself. However, this clandestine arrangement did not change the legal reality that Michael gained title to the assets purchased under his name. If somehow this testimony is credited, it is necessary for the trial court to determine the purpose of Michael's transfer of the assets to Robert. Was it a gift to Robert? Was it pursuant to an oral contract? If pursuant to an oral contract, what was the consideration to Michael for assuming the liability in the first instance? And ultimately, what effect would any of these findings have on Robert's liability to Michael pursuant to the note and mortgage?

We cannot address these issues in the absence of credibility determinations. We therefore vacate the judgment, and remand for the trial court to hold such further proceedings, if any, it deems necessary to address these issues.

*Id*. at 7-9 (emphasis added). Michael filed his Petition for Rehearing En Banc with this Court on March 18, 2016, and we denied the same by *per curiam* order on May 12, 2016.

In accordance with our Memorandum decision, upon remand the trial court conducted a hearing the purpose of which was to enable it to make findings pertaining to the details of the arrangements between Michael and

- 6 -

Robert Goetz (hereinafter "Robert") in connection with the public auction held on April 18, 2009. At the outset of the hearing, Linda chose not to supplement the record with additional evidence and rested. N.T., 1/11/17, at 3-4. Thereafter, Michael called Robert on direct examination. *Id*. at 6. Robert explained that while Michael received the ticket to bid, Robert did the actual bidding. Robert stated he did not want his identity to be revealed as a bidder, because his name appeared on a number of the items to be auctioned. *Id*. at 7. Robert estimated that he had bid $61,000 by the end of the auction. *Id*.

Robert further testified that while Michael paid nothing for the auctioned items, Robert paid thirty-five thousand dollars with funds he had borrowed, and the trial court awarded Linda twenty-eight thousand dollars to cover the difference in the divorce proceeding. *Id*. Robert stated he did not give any of the items purchased or cash proceeds from the liquidation thereof to Michael, nor did he pay Michael any portion of the twenty-five thousand dollars Michael had lent to him. *Id*. at 8.

On cross-examination, counsel for Linda questioned Robert about numerous statements Michael had made while testifying at the divorce proceeding on July 8, 2012. *Id*. at 10-15. Robert clarified that the trial court had determined Robert was buyer number sixty at the auction. **Id**. at 16-17. Robert consistently testified he did not remember or know the answers to numerous additional questions counsel posed which harkened back to the divorce proceeding. *Id*. at 18-23. Argument ensued at which time Robert's

counsel indicated that the matters about which Linda's counsel was asking questions had been resolved pursuant to the divorce proceeding. *Id*. at 27. Specifically counsel explained:

> [Robert] paid for the items. Judge Bigham entered an order solidifying that situation. Master Phillips laid out in detail where the $61,000 came from, 35 from [Robert] and an allocation against [Robert's] property division in favor of [Linda]. [Linda's counsel] is acting like this is an issue that is still unresolved. He was the winner in this case and he has all of these documents.

*Id*. at 27. Following this statement, the trial court admitted Linda's exhibits 9 and 10 solely for the purpose of impeaching Robert.[2] After additional questioning regarding the manner in which the property obtained at the auction had been disposed, Robert's counsel objected. The trial court indicated that the line of questioning exceeded the scope of cross-examination and was essentially an attempt to re-litigate the divorce proceeding and explore a collateral bankruptcy proceeding that was initiated on April 26, 2013, which it deemed to be impermissible. *Id*. at 30-34, 41-43.

Robert could not explain why a mortgage to Michael had not been recorded until nearly a year after Robert received the twenty-five thousand dollars from Michael, nor could he recall why the mortgage had not been recorded "until more than eight months after [Robert] used the $25,000 to pay on account of items purchased on bid number 60 at the public auction[.]"

_____

[2] Plaintiff's Exhibit 9 is Linda's sixth petition for special relief in the divorce matter and Exhibit 10 is Robert's reply thereto.

- 8 -

*Id*. at 46.  Robert also did not recall recording a $25,000 mortgage from Linda and him to Robert's sister, Ann Williams.  *Id*. at 46-48.

Following Robert's testimony, Linda briefly testified.[3]  She indicated she never received payment on the judgment in her favor in the divorce case which exceeded fifty-seven thousand dollars for counsel fees, expenses and alimony pendente lite.  *Id*. at 51.  She also identified Plaintiff's Exhibit 24 as a receipt from the Register and Recorders Office as the recording of the "Ann Williams mortgage."  *Id*.  She further explained that Plaintiff's Exhibit 25 was a copy of a mortgage to Michael in the sum of twenty-five thousand dollars. *Id*.  She acknowledged the mortgage "says Ann Williams about five lines down" and that her signature appeared on the fourth page.  *Id*.

Following the January 11, 2017, hearing, the trial court issued an Order on June 30, 2017, which reads as follows:

> AND NOW, this 30th day of June, 2017, after hearing held in this matter and after consideration of the proposed findings of fact submitted by each party, pursuant to the direction of the Pennsylvania Superior Court, the [c]ourt makes the following factual findings:
>
> 1. The Findings of Fact entered on December 15, 2014[,] are Reaffirmed and incorporated herein by reference.
>
> 2. The Court finds the testimony of Michael Williams credible when he indicates that he has never received any payment on the $25,000 mortgage executed to him by Robert K. Goetz, Jr. and Linda M. Goetz. Transcript of non-jury trial, October 28, 2014, pg. 59-60.

---

[3] Her testimony on direct examination spans just one page, and counsel for Michael asked no questions on cross-examination.

3. The mortgage referred to in paragraph 2 above secured a loan to the parties from Michael Williams in the amount of $25,000 as evidenced by Check No. 510. Plaintiffs Exhibit No. 4.

4. Michael Williams registered as Bidder No. 60 at a public auction of marital assets in the Goetz divorce which was held on April 18, 2009. Stipulation of Fact No. 23.

5. Michael Williams registered as Bidder No. 60 to facilitate bidding on the auctioned items by Robert Goetz, Jr. Tr., pg. 59.

6. Michael Williams did not pay for any item bid under Bid No. 60 nor received proceeds or income from any item purchased under Bid No. 60. Tr., pg. 59.

7. The total purchase price for items purchased under Bid No. 60 was $61,240. Plaintiffs Exhibit No. 7.

8. Robert Goetz, Jr. paid $35,000 on account of the items purchased against Bid No. 60. Stipulation of Fact No. 8.

9. $26,240 of the $61,240 due under Bid No. 60 was never paid to the auctioneer. Plaintiffs No. 17; Finding of Fact No. 64; Plaintiffs Exhibit No. 9, paragraph 76.

10. Vehicles purchased at auction under Bid No. 60 could not be transferred due to clouds on the title to the vehicles. Plaintiffs No. 9, paragraphs 23-52.

11. The $26,240 not paid to the auctioneer under Bid No. 60 was assessed to Robert Goetz, Jr. as part of the property distribution in the divorce proceeding between Robert Goetz, Jr. and Linda Goetz. Plaintiffs No. 17, Recommendation 4H, pg. 25.

12. Possession of the $61,240 worth of equipment purchased under Bid No. 60 was awarded to Robert Goetz, Jr. as part of the master's recommendations in the divorce between Robert Goetz, Jr. and Linda Goetz. Plaintiffs No. 17, Recommendation 4H, pg. 25.

13. The property purchased under Bid No. 60 was retained fully by Robert Goetz, Jr. with Michael Williams receiving no consideration or profit in permitting the property to pass through his bid number from the auctioneer to Robert Goetz, Jr.

14. Michael Williams' action in permitting Robert Goetz, Jr. to purchase items under Bid No. 60 was a courtesy granted between family members.

## CONCLUSIONS OF LAW

1. In an action to quiet title, plaintiff has the burden of proof to establish [his or her] right by a fair preponderance of the evidence. ***Poffenberger v. Goldstein***, 776 A.2d 1037 (Pa. Cmwlth. 2001).

2. Any transfer of assets, or title to those assets, to Michael Williams as a result of Bid No. 60 being in his name was immediately transferred from Michael Williams to Robert Goetz at equal value and did not involve any profit to Michael Williams in any form including the forgiveness of debt.

## ORDER OF COURT

AND NOW, this 30th day of June, 2017, the judgment entered May 5, 2015 is confirmed and the Adams County Prothonotary's Office is directed to enter judgment as set forth therein.

Trial Court Order, entered June 30, 2017, at 1-3 (unnumbered).

Linda filed a timely notice of appeal on July 26, 2017. On July 28, 2017, the trial court ordered Linda to file a concise statement of errors complained of on appeal within twenty-one (21) days. On August 14, 2017, Linda submitted a multi-page, multi-paragraph statement wherein she raised twenty-one claims of error. The issues set forth therein read, *verbatim*, as follows:

- 11 -

1. In calling Robert Goetz to testify on his behalf, Michael Williams called a witness who is in flagrant, obstinate, defiant, and contumacious violation, of various Orders of this court in the Goetz divorce case that are directly related to the controversy in this case and that deprives Robert Goetz of all credibility and requires that all contested issues of fact be resolved against Michael Williams.

2. The Finding of Fact that the testimony of Michael Williams is credible is contrary to the clear and convincing evidence of record which establishes a pattern of years of fraudulent collusion between Robert Goetz and Michael Williams, including the knowing and fraudulent diversion of the proceeds of the mortgage in question from the expressly represented purpose of payment on account of the judgment of Linda Goetz against Robert Goetz to the payment on account of items that Michael Williams admitted under oath that he purchased for resale.

3. The Finding of Fact that there is no credible evidence that Michael Williams personally received any equipment from the property purchased at the April 19, 2009, public auction is contrary to the testimony of Michael Williams under oath under direct examination and, again, on cross-examination in the Goetz divorce in which Michael Williams admitted that he was purchasing the items at the public auction to resell them.

4. The evidence offered by Michael Williams on remand does not answer the inquiries of the Superior Court as to the purpose for Michael's transfer to Robert Goetz of the assets that he purchased at the public auction other than to achieve the fraudulent diversion of the mortgage proceeds from their expressly represented application on account of the judgment of Linda Goetz against Robert Goetz.

5. The evidence offered by Michael Williams on remand does not answer the inquiries of the Superior Court as to the consideration that Michael Williams received for his assumption of the legal liability to pay for the items that were purchased at the public auction.

6. Characterization, of the undisputable evidence of active fraudulent collusion between Robert Goetz and Michael Williams to divert the proceeds of the mortgage in question as

a "courtesy granted between family members" is contrary to the undisputable, clear, and convincing evidence of record and an abuse of discretion.

7. The Finding of Fact that there is no credible evidence that Michael Williams personally received any equipment from the property purchased at the April 19, 2009, public auction is contrary to stipulations 23 through 27 and 30 that Michael Williams successfully bid on $61,240 worth of items at the public auction of marital assets in the Goetz divorce case on April 18, 2009.

8. The Finding of Fact that there is no credible evidence that Robert Goetz paid any amounts to Michael Williams as reimbursement for check number 510 is contrary to stipulations 23 through 30 that Michael Williams purchased $61,240 worth of items at the public auction of marital assets in the Goetz divorce case on April 18, 2009, and that Robert Goetz paid for $35,000 worth of those items.

9. The Finding of Fact that there is no credible evidence that Robert Goetz paid any amounts to Michael Williams as reimbursement for check number 510 is contrary to the undenied testimony of Linda M. Goetz that $25,000 of the $35,000 that Robert Goetz paid on account of the bids of Michael Williams at the public auction of marital assets in the Goetz divorce case on April 18, 2009, were the same $25,000 that Michael Williams had transferred to Robert Goetz in check number 510 on January 27, 2009.

10. The Finding of Fact that there is no credible evidence that Robert Goetz paid any amounts to Michael Williams as reimbursement for check number 510 is contrary to stipulation 28 that Michael Williams knew that Robert Goetz paid $35,000 on account of the items that were purchased against bid # 60 at the public auction of marital assets in the Goetz divorce case on April 18, 2009.

11. The Finding of Fact that there is no credible evidence that Robert Goetz paid any amounts to Michael Williams as reimbursement for check number 510 is contrary to stipulation 29 that Michael Williams paid nothing on account of the items that were bid on bid # 60 at the public auction of marital assets in the Goetz divorce case on April 18, 2009.

12.    It was error to fail to conclude that, when Michael Williams consented to the payment of $35,000 by Robert Goetz on account of the bids of Michael Williams at the public auction on April 18, 2009, that the mortgage to Michael Williams was paid in full.

13.    The failure to conclude that the fraud and collusion between Robert Goetz and Michael Williams to divert the $25,000 from the expressly represented application of the funds for the direct benefit of Linda M. Goetz to the direct benefit of Michael Williams constituted a fraud upon Linda M. Goetz is contrary to the undisputable, clear, and convincing evidence of record.

14.    The failure to conclude that the mortgage and note to Michael Williams are void and unenforceable due to the fraudulent misconduct of Robert Goetz and Michael Williams is contrary to the undisputable, clear, and convincing evidence of record.

15.    The failure to conclude that the mortgage to Michael Williams was divested by the equitable distribution Order of May 5, 2011, in the Goetz divorce confirming the express language of the mortgage and the recommendation of Master Phillips that Robert Goetz was responsible for repayment of the loan to Michael Williams is an error of law and an abuse of discretion.

16.    Where Michael Williams admitted the averment in paragraph 20 of the initial Complaint that he had actual knowledge of the pendency of the Goetz divorce proceedings prior to the execution of the mortgage in question, it was an error of law and an abuse of discretion to fail to conclude that Michael Williams was on notice that, at the time that Linda M. Goetz signed the mortgage in question, the collateral for the mortgage was in *custodia legis* in the Goetz divorce case so that the lien of the mortgage could only attach to the collateral *in rem* after the entry of the order of equitable distribution in the Goetz divorce case.

17.    Where Michael Williams admitted the averment in paragraph 20 of the initial Complaint that he had actual knowledge of the pendency of the Goetz divorce proceedings prior to the execution of the mortgage in question, it was an error of law

and an abuse of discretion to fail to conclude that Michael Williams was on notice that the collateral for the mortgage was subject to orders of court in the divorce case under the doctrine of *custodia legis*.

18. Where Michael Williams admitted the averment in paragraph 20 of the initial Complaint that he had actual knowledge of the pendency of the Goetz divorce proceedings prior to the execution of the mortgage in question, it was an error of law and an abuse of discretion to fail to conclude that, because the collateral for the mortgage was in *custodia legis* in the Goetz divorce case, the cash award to Linda M. Goetz in the Goetz divorce case had priority over the lien of the mortgage to Michael Williams.

19. Where Michael Williams admitted the averment in paragraph 20 of the initial Complaint that he had actual knowledge of the pendency of the Goetz divorce proceedings prior to the execution of the mortgage in question, it was an error of law and an abuse of discretion to fail to conclude that the mortgage to Michael Williams was divested by the Order of May 5, 2011, in the Goetz divorce case that confirmed the express language of the mortgage and the recommendation of Master Phillips that only Robert Goetz was responsible for repayment of the loan to Michael Williams.

20. Where Michael Williams admitted the averment in paragraph 20 of the initial Complaint that he had actual knowledge of the pendency of the Goetz divorce proceedings prior to the execution of the mortgage in question, it was an error of law and an abuse of discretion to fail to conclude that the mortgage to Michael Williams was divested by the Sheriff's sale on March 16, 2012, which sale was upon the unsatisfied lien against Robert Goetz in the Goetz divorce case, which lien had priority over the lien of the mortgage to Michael Williams under the doctrine of in *custodia legis*.

21. Where Robert Goetz was ordered to pay the mortgage in question in the Goetz divorce case, it was an error of law and an abuse of discretion to fail to conclude that Linda M. Goetz is not required to pay the mortgage under the doctrine of *custodia legis*.

22.   Linda M. Goetz requests leave to supplement this statement upon the filing of the transcript of the testimony of January 11, 2017, herein. [4]

Plaintiff's Concise Statement of Errors Complained of on Appeal, filed August 14, 2017, at 1-6.   On September 7, 2017, the trial court filed its Opinion pursuant to Pa.R.A.P. 1925(a).

In her brief, Linda presents the following Statement of Questions Involved:

I.   Are the findings in the decisions of December 15, 2014, and June 30, 2017, of the court below manifestly unreasonable in light of the sustainable evidence of record?

II.   Did Robert offer any credible evidence on remand that would answer the questions of your honorable court[] that were raised in the opinion that reversed the original decision of the court below?

III.   Where Michael knew when he tendered the $25,000 to Robert, that Robert was in the middle of divorce proceedings and that Robert had committed to apply the mortgage proceeds to Linda's lien in the divorce case, did Linda's lien in the divorce case have lien priority over Michael's mortgage under the doctrine of *in custodia legis*.

Brief for Appellant at 6 (unnecessary capitalization omitted).

Before we consider the merits of these claims, we first must determine whether Linda has preserved them for appellate review.  ***Commonwealth v.***

_____

[4] We remind appellate counsel that requesting leave to supplement a Rule 1925(b) statement upon receiving notes of testimony is not in accordance with the prescribed procedure to supplement the statement set forth in Rule 1925(b)(2). Merely requesting leave to supplement the statement is not the equivalent of applying to the trial court and having a request granted by the court "for good cause shown." ***See*** Pa.R.A.P. 1925(b)(2).

***Wholaver***, 588 Pa. 218, 903 A.2d 1178 (2006) (holding appellate courts may determine *sua sponte* whether an appellant has properly preserved issues for appeal). The fact that an appellant timely filed a Pa.R.A.P. 1925(b) statement "does not automatically equate with issue preservation." ***Jiricko v. Geico Ins. Co.***, 947 A.2d 206, 210 (Pa.Super. 2008), *appeal denied*, 598 Pa. 775, 958 A.2d 1048 (2008). To the contrary, our law makes it clear that Rule 1925(b) is not satisfied when one simply files any statement. ***Tucker v. R.M. Tours***, 939 A.2d 343, 346 (Pa.Super. 2007), *reargument denied*, Jan. 30, 2008, *affirmed*, 602 Pa. 147, 977 A.2d 1170 (2009). Pa.R.A.P. 1925(b)(4) requires that the statement "concisely identify each ruling or error that the appellant intends to challenge" and shall "not be redundant or provide lengthy explanations as to any error."

Rule 1925 is a "crucial component of the appellate process, because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal." ***Kanter v. Epstein***, 866 A.2d 394, 400 (Pa.Super. 2004) (citation omitted), *appeal denied,* 584 Pa. 678, 880 A.2d 1239 (2005), *cert. denied,* ***Spector Gadon & Rosen, P.C. v. Kanter***, 546 U.S. 1092, 126 S.Ct. 1048, 163 L.Ed.2d 858 (2006). For this reason, Pennsylvania courts repeatedly have held that an appellant waives all matters for review where he or she identifies an excessive number of issues in the concise statement. ***See Lineberger v. Wyeth***, 894 A.2d 141 (Pa.Super. 2006); ***see also Jones v. Jones***, 878 A.2d 86 (Pa.Super. 2005) (holding issues waived for appellate

review where the purpose of filing seven page, twenty-nine issue statement was to place undue burden on trial court and delay a resolution of the proceeding); *Kanter supra* (finding fifteen page, fifty-five issue statement resulted in waiver).

This Court has explained Rule 1925 waiver by stating that "when an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues." *Lineberger*, *supra* at 148 (internal citations omitted). Accordingly, we have concluded that the submission of a Rule 1925(b) statement which is so redundant, vague, incoherent, or confusing as to prevent the lower court from engaging in a meaningful analysis results in waiver of all claims presented. *Commonwealth v. Ray*, 134 A.3d 1109 (Pa.Super 2016) (finding waiver of all claims where the appellant failed to identify his claims in an adequate and concise manner); *See also Jones*, *supra*.

In *Tucker*, *supra*, this Court further stated:

[T]his Court has held that when appellants raise an outrageous number of issues in their 1925(b) statement, the appellants have deliberately circumvented the meaning and purpose of Rule 1925(b) and ha[ve] thereby effectively precluded appellate review of the issues [they] now seek to raise. We have further noted that such voluminous statements do not identify the issues that appellants actually intend to raise on appeal because the briefing limitations contained in Pa.R.A.P. 2116(a) make[ ] the raising of so many issues impossible. Further, this type of extravagant 1925(b) statement makes it all but impossible for the trial court to provide a comprehensive analysis of the issues.

*Id.* at 346 (citations and internal quotation marks omitted; brackets in original). More recently, we also held:

> Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. Rule 1925 is thus a crucial component of the appellate process. When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. In other words, a [c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all.

*Commonwealth v. Ray*, 134 A.3d 1109, 1114 (Pa.Super. 2016) (citation omitted).

However, "the number of issues raised in a Rule 1925(b) statement does not, without more, provide a basis upon which to deny appellate review where an appeal otherwise complies with the mandates of appellate practice." *Mahonski v. Engel*, 145 A.3d 175, 181 (Pa.Super. 2016), appeal denied, ____ Pa. ____, 1168 A.3d 1277 (2017) (quotation marks and quotation omitted), *appeal denied*, ____ Pa. ____, 168 A.3d 1277 (2017). This Court has recognized that the complexity of the matter under review is a consideration for courts to make prior to finding waiver based on the sheer volume of the concise statement. *Id.* (citing *Eiser v. Brown & Williamson Tobacco Corp.*, 595 Pa. 366, 938 A.2d 417 (2007) (plurality) wherein the Pennsylvania Supreme Court stressed the appellants had a reasonable basis to include a large number of issues in their Rule 1925(b) statement because they had filed

a complicated lawsuit with numerous defendants that contained multiple counts and had resulted in a large number of trial court rulings).

The case *sub judice* does not involve a complicated matter but, instead, pertains to a conventional quiet title action which initially required a single-day non-jury trial and was supplemented with an additional hearing, as per this Court's directive, at which Linda chose not to present additional evidence. More importantly, the extravagance of Appellant's Rule 1925(b) statement has impeded the appellate process in that it precluded the trial court from providing a comprehensive analysis of the issues. This is evident in the fact that the trial court did not engage in a legal analysis of each specific issue asserted in the 1925(b) statement, and, instead, attempted to rephrase the allegations generally as follows:[5]

1. Appellant takes exception to this [c]ourt's credibility determinations alleging factual findings that are not supported by the record; and

2. Appellant claims the [c]ourt erred in failing to find that the mortgage at issue is defeated under the legal theory of *custodia legis*.

Opinion Pursuant To Pa.R.A.P. 1925(a), filed 9/7/11, at 1. However, even if the court correctly guesses the issues raised on appeal and writes a 1925(a)

---

[5] While the trial court did not specifically do so in its latest Opinion filed on September 7, 2017, in its prior Pa.R.A.P. 1925(a) which pertained to Appellant's appeal from its Order dated December 15, 2014, the trial court cited to **Kanter, supra** upon noting Appellant had raised nineteen separate issues and attempted to address those issues in the context of three general claims. **See** Opinion Pursuant To Pa.R.A.P. 1925(a), filed 7/1/15, at 1.

Opinion, the issues may still be waived. *See Kanter, supra* 866 A.2d at 400.

Based upon our review of the Statement, we likewise have difficulty discerning what exact issues Linda is raising. For instance, her first issue is simply a sweeping statement challenging Robert's credibility in all respects, while numerous others refer to findings of fact without citation to the record. *See* Plaintiff's Concise Statement of Errors Complained of on Appeal, filed August 14, 2017, Issues 2-3, 7-11. In addition, Issues 4-5 refer generally to how Michaels's evidence presented on remand failed to satisfy "inquiries of this Court." Finally, numerous other claims harken back to determinations made in the divorce proceeding. *See* Issues 15-21.

Moreover, as described above, this Court remanded the instant matter to enable the trial court to determine the ongoing validity of the mortgage, executed by Robert and Linda and held by Michael, against 3380 Chambersburg Road. Thus, the purpose of remand was limited in scope. "[I]n remanding a case for rehearing, [the appellate court] may limit the scope thereof to certain defined issues. This limitation restricts the power of the court below to a determination of those issues." *Quaker State Oil Ref. Co. v. Talbot*, 322 Pa. 155, 159-60, 185 A. 586, 588 (1936). Where a case is remanded for a specific and limited purpose, the trial court must strictly comply with the appellate court's mandate. *Agostinelli v. Edwards*, 98 A.3d 695, 706 (Pa. Super. 2014), *appeal denied*, 631 Pa. 734, 113 A.3d 278 (2015) (requiring strict compliance with the mandate of the appellate court on

remand). Many of the issues Linda attempts to assert in her Rule 1925 statement pertain to the parties' divorce proceeding in 2009.[6] Linda cannot now attempt to re-litigate those claims, and a holding to the contrary would give her an impermissible second bite at the apple.

As Appellant does not clearly state her challenges, we affirm on the basis that she has waived all issues on appeal due to her improper concise statement. ***See Tucker***, 939 A.2d at 346.[7]

Order affirmed.

Judge Panella joins the memorandum.

Judge Olson concurs in the result.


Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/25/18

---

[6] A Decree in Divorce was entered on July 14, 2011. Therein, it was indicated that all claims had been resolved pursuant to a Master's Report and Recommendation filed on January 26, 2011, which was adopted in full as the Opinion of the trial court. ***See*** Plaintiff's Exhibit 2.

[7] This Court may affirm the trial court on any valid basis. ***Plasticert, Inc. v. Westfield Ins. Co.***, 923 A.2d 489, 492 (Pa.Super. 2007).