J-A25009-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH OLINSKY, III | : | |
| | : | |
| Appellant | : | No. 187 WDA 2021 |

Appeal from the Judgment of Sentence Entered May 11, 2020,
in the Court of Common Pleas of Washington County,
Criminal Division at No(s): CP-63-CR-0001684-2019.

BEFORE: KUNSELMAN, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: APRIL 3, 2023**

Joseph Olinsky, III appeals from the judgment of sentence imposed following his convictions for aggravated assault, conspiracy, and simple assault.[1] We affirm.

This case stems from an incident at the Slovak Club in Charleroi, Washington County, on the evening of April 18, 2019. Seven members of the Pagans Motorcycle Club attacked victim Troy Harris, a former Pagan who had joined the rival Sutar Soldiers club. Surveillance video shows the group filing into the club, Jason Huff (the first Pagan in line) promptly striking Mr. Harris, Matthew Vasquez (the next) throwing a punch, and the group clustering on the floor as the attack continued. Olinsky is shown restraining and hitting Michelle Harris, the victim's wife. Less than a minute after entering the club,

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 903(a)(1), and 2701(a)(1)

the seven Pagans rode away. Mr. Harris was Life Flighted to treat his severe injuries.

Ultimately, the Commonwealth charged the seven Pagans present for their role in the attack. The Commonwealth also charged Michael Barringer (Pagans National Sergeant at Arms), Brian Keruskin (Fayette Pagans President), Zachary Yagnich (Slovak Club Vice President), and Jamie Granato (Vasquez's then fiancée). Four of the Pagans present at the Slovak Club pled to aggravated assault and/or conspiracy to commit aggravated assault, as did Barringer and Keruskin.[2] Vasquez and Olinsky did not. The Commonwealth consolidated its cases against Vasquez and Olinsky for trial.

In preparing for trial, the parties became aware of three guns that were in the Slovak Club during the attack. First, Mrs. Harris had a gun in her purse that she was unable to access while her husband was being assaulted. **See** N.T., Preliminary Hearing, 7/16/19, at 128. Second, Mr. Harris had a gun in his back pocket that was recovered when he arrived at the hospital. **See** N.T., Hearing, 1/23/20, at 41. Third, three minutes after the Pagans had left, surveillance video shows Mrs. Harris picking up a gun and holster from where Mr. Harris was and then putting them in her purse. Olinsky and Vasquez claimed at trial that they saw Mr. Harris with this gun as they approached him.

---

[2] Keruskin entered a *nolo contendere* plea; the others entered guilty pleas. At the time of trial in this case, charges remained pending against Paul Cochran, a Pagan who testified for the Commonwealth.

The parties extensively litigated whether evidence of these guns would be admissible at trial. First, the Commonwealth moved *in limine* to exclude "any mention" that Mr. Harris "was in possession of a gun on the night of the assault." Motion, 12/16/19, at 1. At a hearing on January 23, 2020, the trial court granted the motion, stating on the record that it would exclude any reference to Mr. Harris' gun "without prejudice" and revisit the issue if it became germane at trial. Order, 1/23/20, at 2; N.T., 1/23/20, at 46. The Commonwealth then moved to exclude reference to Mrs. Harris handling or possessing any gun. Motion *in Limine*, 1/24/20, at 1–4. The trial court heard this motion *ex parte* and entered the following order:

> AND NOW this 30<u>th</u> day of January 2020, upon motion of the Commonwealth, the Court hereby grants the Commonwealth's Motion in Limine concerning ANY reference to a firearm being possessed by the victim. This order also prohibits any reference to a firearm being handled by the victim's wife after the alleged crimes. This shall further prohibit defense counsel from asking questions of witnesses concerning ANY firearm, showing portions of the video of the Slovak Club, and still shots of the victim's wife with a firearm after the alleged crime. The Court is hereby clarifying its previous order of January 23, 2020, granting the Commonwealth's Motion to exclude reference to a firearm.

Order, 1/30/20.

On February 4, 2020, the morning of trial, the parties addressed the matter further in chambers. Olinsky's counsel asked the trial court to reconsider its prior orders regarding the video showing Mrs. Harris retrieving the gun from the floor. N.T., Motion *in Limine*, 2/4/20, at 14–17. As the court announced that it would stand by its rulings to exclude this portion of the

video, Olinsky's counsel moved to also exclude the rest of the video, citing the rule of completeness. *Id.* at 25–28. The trial court also denied this motion, entering orders that both of Olinsky's motions were denied. Orders, filed 2/11/20.[3] Later that day, the trial court announced that it would stand by its prior rulings about the gun, except that both defendants could testify to their own observations. N.T., Trial Vol. I, 2/4/20, at 217–219.

During the cross-examination of Vasquez, the Commonwealth sought to prove the existence of a conspiracy by showing that six other Pagans pled guilty to conspiracy: Barringer, Corey Volk, Keruskin, Joshua Pagliei, Huff, and John Sadvary. N.T., Trial Vol. III, 2/6/20, at 154–156. The Commonwealth questioned Vasquez whether each of these non-testifying Pagans "pled guilty," "took responsibility," and was "sitting in state prison" as a result. *Id.* The Commonwealth introduced their sentence orders into evidence. *Id.* at 156–157. In a sidebar discussion before this cross-examination, counsel for Olinsky objected on the basis that it was prejudicial and unfair to her client, who had not yet testified. *Id.* at 147.

Olinsky testified in his own defense. He denied that anyone had talked to him about attacking Troy Harris. He said he entered the Slovak Club and saw the Pagans at the front of the line "scuffle for a gun." N.T., Trial Vol. III,

---

[3] Both orders were hand-dated February 4, 2020, and both were clocked at 12:04 p.m. on February 11, 2020.

2/6/20, at 191–192. Olinsky did not ask any other witnesses about Mr. Harris' gun,[4] nor did he try to play the excluded portion of the video.

The jury found Olinsky guilty of aggravated assault, conspiracy to commit aggravated assault, and conspiracy, but not guilty of attempted murder and conspiracy to commit murder. The trial court sentenced Olinsky to an aggregate sentence of 20 to 40 years of imprisonment. Olinsky filed post-sentence motions, which the trial court denied. Olinsky appealed.[5] Olinsky complied with Pennsylvania Rule of Appellate Procedure 1925(b).

Olinsky raises five issues for our review:

1. The defense theory centered on the fact that the defendants saw the victim reach for his firearm. Video evidence corroborated the defendants' claim. The trial court, however, refused to allow the jury to see the video or allow the defendants to question the prosecution witnesses concerning the firearm. Did the court err?

2. The court allowed the Commonwealth to introduce the non-testifying co-defendants' guilty pleas. Did the court err?

3. Related to question two, did the court also err because it refused to give a cautionary jury instruction?

_____

[4] Olinsky asked Edward Brown, who saw the attack, if Brown indicated that he "did not see any weapons." N.T., Trial Vol. I, at 143. When the prosecutor objected that Olinsky was "trying to back-door the gun in," counsel clarified that she meant to ask if the Pagans were armed. The trial court let her ask if the Pagans had weapons, but not about "the other gun." *Id.* at 145.

[5] Olinsky filed his post-sentence motions on May 18, 2020. The trial court should therefore have ruled on them by September 15, 2020. Pa.R.Crim.P. 720(B)(3)(a). Because the clerk of courts failed to enter an order stating that Olinsky's motions were denied by operation of law, and because Olinsky filed his notice of appeal within 30 days of the trial court's order denying the motions on January 8, 2021, we treat the appeal as timely. *Commonwealth v. Perry*, 820 A.2d 734, 735 (Pa. Super. 2003).

4. Mr. Olinsky testified that he acted to defend his friends because he was afraid they'd be shot. The trial court refused to give a defense of others instruction. Did the court err?

5. Did the court err when it imposed a harsher punishment (i.e., a penalty) based on Mr. Olinsky's exercise of his right to trial?

Olinsky's Brief at 3–4. We will address each issue in turn.

### I. Olinsky waived his challenge to the exclusion of evidence of Mr. Harris' gun.

Olinsky first contends that the trial court abused its discretion by excluding evidence that Mr. Harris had a gun, which Mrs. Harris later retrieved. We conclude that he has failed to preserve this issue for our review. *See Commonwealth v. Edmondson*, 718 A.2d 751, 752 n.7 (Pa. 1998) ("This Court may raise the issue of waiver sua sponte."); *see also Commonwealth v. Wholaver*, 903 A.2d 1178, 1184 (Pa. 2006) (analyzing waiver *sua sponte* for failure to file a Rule 1925(b) statement). *But cf. Commonwealth v. Wolfel*, 233 A.3d 784, 790 (Pa. 2020) (disapproving the Superior Court's *sua sponte* holding of waiver in the suppression context).[6] In general, "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Pennsylvania Rule of Evidence 103 provides for preserving challenges to evidentiary rulings:

**(a) Preserving a Claim of Error.** A party may claim error in a ruling to admit or exclude evidence only:

(1) if the ruling admits evidence, a party, on the record:

---

[6] After oral argument, we granted Olinsky's motion to brief this issue. We duly considered both Olinsky's short brief and the Commonwealth's response.

(A) makes a timely objection, motion to strike, or motion *in limine*; and

(B) states the specific ground, unless it was apparent from the context; or

(2) if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.

**(b) Not Needing to Renew an Objection or Offer of Proof.** Once the court rules definitively on the record--either before or at trial--a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

Pa.R.E. 103(a), (b).

Here, the trial court entered orders on January 23 and 30, 2020, granting the Commonwealth's motions *in limine* to exclude evidence of Mr. and Mrs. Harris' guns. At the hearing on January 23, 2020, the trial court explained that it was doing so "without prejudice." Olinsky moved for reconsideration of both orders before trial, contesting the *ex parte* nature of the proceeding on January 30, 2020. The trial court ruled that it would permit the defendants to testify about Mr. Harris' gun, and it entered a written order that Olinsky's reconsideration motion was denied. Order, filed 2/11/20.

Ultimately, both defendants testified that Mr. Harris had a gun. After this testimony, Olinsky did not attempt to admit any other evidence of Mr. Harris' gun, such as recalling witnesses or presenting the video of Mrs. Harris retrieving her husband's gun from the floor. Because the trial court's initial ruling—and by extension, its ruling on Olinsky's reconsideration motion—were "without prejudice," Olinsky failed to obtain a definitive ruling on the record after the issue of Mr. Harris' gun became relevant. Because Olinsky did not

- 7 -

obtain a definitive ruling on the record in this case excluding evidence, he has waived this issue.

## II. The trial court's error in allowing evidence of non-testifying co-conspirators' guilty pleas was harmless.

Olinsky's second issue concerns the Commonwealth's introduction, during Vasquez's cross-examination, of the fact that six other Pagans, who did not testify, "pled guilty" to conspiracy, "took responsibility," and were therefore "sitting in state prison." N.T., Trial Vol. III, 2/6/20, at 154–156. The Commonwealth sought to use this evidence to rebut Vasquez's testimony that Barringer had not commissioned him to do anything. *Id.* at 144. Olinsky, who had not yet testified, objected on the basis that it was prejudicial and unfair to him. *Id.* at 147. The trial court overruled the objection, denied an additional motion to sever, and allowed the questioning.

Olinsky now challenges this evidence on two grounds. First, he contends that the non-testifying Pagans' guilty pleas were testimonial hearsay that was inadmissible under the facts of his case. Olinsky's Brief at 49–53 (citing *Hemphill v. New York*, 142 S. Ct. 681 (2022)). Second, he notes that this evidence was irrelevant and unfairly prejudicial against him. *Id.* at 54–55 (citing *Commonwealth v. Geho*, 302 A.2d 463 (Pa. Super. 1973)).

Olinsky's first challenge is waived. The only basis for his objection prior to the introduction of this evidence was that it was prejudicial and unfair. He did not argue that the guilty pleas were testimonial hearsay in violation of his confrontation rights. Therefore, he failed to preserve this challenge.

Olinsky's second challenge is preserved insofar as he argues that the evidence was unfairly prejudicial. We conclude that the trial court erred in allowing the introduction of the guilty pleas of other defendants, which this Court has explained "cannot be considered as evidence against those who are on trial." *Geho*, 302 A.2d at 465–66 (quoting *United States v. Restaino*, 369 F.2d 544, 545 (3d Cir. 1966)).

However, we hold that the trial court's error was harmless. *Cf. Commonwealth v. Boyer (Boyer I)*, 856 A.2d 149, 155 (Pa. Super. 2004), *aff'd*, 891 A.2d 1265 (Pa. 2006) (analyzing whether introducing a non-testifying co-defendant's guilty plea was harmless error).[7] An error is harmless "only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." *Commonwealth v. Holt*, 273 A.3d 514, 540 (Pa. 2022) (quoting *Commonwealth v. Story*, 383 A.2d 155, 162 (Pa. 1978)). The applicable standard in this case is whether "the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." *Id.* (quoting *Commonwealth v. Fulton*, 179 A.3d 475, 493 (Pa. 2018)).

---

[7] In *Boyer*, this Court found such an error to be harmless where Boyer confessed to the crime. *Boyer*, 856 A.2d at 155. We later reversed the denial of post-conviction relief on another basis, noting that Boyer suffered no prejudice from counsel's stewardship on this issue. *Commonwealth v. Boyer (Boyer III)*, 962 A.2d 1213, 1215 (Pa. Super. 2008).

Olinsky argues that because he testified inconsistently with the existence of a conspiracy, none of the remaining evidence of guilt is uncontradicted. Olinsky's Brief at 56–57, Olinsky's Reply Brief at 5–6. Specifically, Olinsky claims that because his testimony contradicted that of cooperating witness Paul Cochran, we may not consider Cochran's testimony.

The remaining uncontradicted evidence of guilt includes the surveillance footage of the group of Pagans filing into the Slovak Club and immediately attacking Mr. Harris. We deem this evidence to be so overwhelming that the only reasonable inference to be drawn from it is that the group of Pagans, including Olinsky, conspired to commit an aggravated assault against Mr. Harris. We therefore conclude that the trial court's error in allowing the other Pagans' pleas was harmless beyond a reasonable doubt.

### III. The trial court's error in denying Olinsky's request for a cautionary instruction was harmless.

Olinsky's third issue is that the trial court erred in denying his request for a jury instruction that the jury "could not take into consideration the guilty pleas of the other codefendants" in determining whether the Commonwealth met its burden of proof. *Geho*, 302 A.2d at 529. Olinsky preserved this issue. N.T., Trial, Vol. IV, 2/7/20, at 6–7. We agree that the trial court erred in failing to give this requested instruction, notwithstanding the standard instruction on conspiracy that it did provide.

Again, however, we find the trial court's error to be harmless. *See Boyer I*, 856 A.2d at 155 (finding the absence of a *Geho* instruction to be

harmless error).   As described **_supra_**, the surveillance footage leaves no reasonable doubt that Olinsky conspired with the group of Pagans to commit aggravated assault.

### IV.   Olinsky was not entitled to a defense-of-others instruction.

Olinsky's fourth issue is that the trial court committed reversible error by denying his request for a jury instruction on defense of others.   Olinsky's Brief at 62–65.   He points to his testimony in support of this defense:

> So we walked in [to the Slovak Club], and I seen the guys get into a scuffle.   And then I seen that Mr. Vasquez was scuffling, and Mr. Huff had a scuffle, and up ahead of me was Mr. Harris.   I didn't know him at the time.   And it was a scuffle for a gun, and that is how I seen Harris come up from behind me, so I turn around, and I never knew this guy before.
>
> *       *       *
>
> I was scared as hell.   These guys, I care about these guys, I love these guys.   These guys are like my kids at the time.   Seeing people you care about and the guys were trying to disarm him, and I didn't think this.   You're struggling, you're not focusing on whether you're going to kick somebody, you're—somebody has a gun.

N.T., Trial Vol. III, 2/6/20, at 191–192.

The statutory basis for the justification of defense of others is Section 506 of the Crimes Code:

> **Use of force for the protection of other persons.**
>
> (a)  **General rule.**--The use of force upon or toward the person of another is justifiable to protect a third person when:
>
>> (1)  the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;

(2) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and

(3) the actor believes that his intervention is necessary for the protection of such other person.

(b) **Exception.**--Notwithstanding subsection (a), the actor is not obliged to retreat to any greater extent than the person whom he seeks to protect.

18 Pa.C.S.A. § 506. In turn, Section 505 provides in part:

**Use of force in self-protection.**

(a) **Use of force justifiable for protection of the person.**--The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

(b) **Limitations on justifying necessity for use of force.**--

*   *   *

(2) The use of deadly force[8] is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his

---

[8] "Force which, under the circumstances in which it is used, is readily capable of causing death or serious bodily injury." 18 Pa.C.S.A. § 501. There is no dispute that the Pagans used deadly force against Mr. Harris.

place of work by another person whose place of work the actor knows it to be.[9]

\*     \*     \*

(3) Except as otherwise required by this subsection, a person employing protective force may estimate the necessity thereof under the circumstances as he believes them to be when the force is used, without retreating, surrendering possession, doing any other act which he has no legal duty to do or abstaining from any lawful action.

18 Pa.C.S.A. § 505(a), (b).

We have explained when a trial court should instruct a jury on a justification defense as follows:

Before the issue of self-defense or defense of others may be submitted to a jury for consideration, a valid claim of self-defense or defense of others **must be made out as a matter of law, and this determination must be made by the trial judge**. Such claim may consist of evidence from whatever source. Such evidence may be adduced by the defendant as part of his case, or conceivably, may be found in the Commonwealth's own case in chief or be elicited through cross-examination. However, such evidence from whatever source must speak to three specific elements for a claim of self-defense to be placed in issue for a jury's consideration.

Thus, as provided by statute and as interpreted through our case law, to establish the defense of self-defense or defense of others it must be shown that: a) **the [actor] or the other he seeks to protect was free from fault in provoking or continuing the difficulty which resulted in the [use of force]**; b) [if deadly force was used,] the [actor] must have reasonably believed that he or the other he seeks to protect was in imminent danger of death or great bodily harm, and that there was a necessity to use such force in order to save himself or the other therefrom; and c) **the [actor] or the other he seeks to**

_____

[9] Section 505(b)(2.3) provides an exception to the duty to retreat in certain cases where the actor is attacked. There was no evidence in this case that Olinsky or any other Pagan was attacked.

- 13 -

**protect did not violate any duty to retreat or to avoid the danger**.

> If there is any evidence from whatever source that will support **these three elements** then the decision as to whether the claim is a valid one is left to the jury and the jury must be charged properly thereon by the trial court.

*Cmmownealth v. Hornberger*, 74 A.3d 279, 284–85 (Pa. Super. 2013) (brackets omitted, emphasis altered) (quoting *Commonwealth v. Hansley*, 24 A.3d 410, 420–421 (Pa. Super. 2011)).

Here, the trial court rejected Olinsky's request because the surveillance video clearly showed that the Pagans were the aggressors. Trial Court Opinion, 11/23/21, at 26. "There was no evidence, aside from the testimony of [Olinsky and Vasquez], that any other persons were in danger or in need of protection, and their testimony was belied by the video. . . . An instruction on defense of others would have been inappropriate in light of the evidence presented." *Id.* Olinsky contends that this amounts to an impermissible judgment of the credibility of his testimony, which should have been left to the jury. Olinsky's Brief at 64–65.

We find that Olinsky was not entitled to a defense-of-others instruction because the group of seven Pagans, who caused the "scuffle," could have "avoid[ed] the necessity of using [deadly] force with complete safety by retreating" from the Slovak Club. 18 Pa.C.S.A. § 505(b)(2)(ii). Neither Olinsky nor any other witness provided evidence for the jury to find otherwise. Consequently, there was insufficient evidence to support the second requirement for the use of force for the protection of others: "under the

- 14 -

circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force." 18 Pa.C.S.A. § 506(a)(2). Because the evidence was insufficient to establish a justification of defense of others, Olinsky was not entitled to such an instruction, and the trial court did not err in denying his request.

## V. The sentencing court did not punish Olinsky for exercising his right to trial.

Olinsky's final claim is that he received a longer sentence as punishment for exercising his constitutional right to trial. Olinsky's Brief at 65–68. This claim presents a substantial question whether the sentencing court abused its discretion by considering an impermissible factor.[10] *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). "[I]t is constitutionally impermissible for a trial court to impose a more severe sentence because a defendant has chosen to stand trial rather than plead guilty." *Commonwealth v. Bethea*, 379 A.2d 102, 105 (Pa. 1977).

We review whether the sentencing court relied on the defendant's exercise of his right to trial, even if the court also considered other, permissible factors. *Id.*

_____

[10] Olinsky's failure to include a Pa.R.A.P. 2119(f) statement in his brief would have resulted in waiver of his sentencing issue if the Commonwealth had objected to the omission. *Commonwealth v. Lynch*, 242 A.3d 339, 346 (Pa. Super. 2020). The Commonwealth instead challenged whether Olinsky raised a substantial question that his sentence was inappropriate. Commonwealth's Brief at 30–31.

In deciding whether a trial judge considered only permissible factors in sentencing a defendant, an appellate court must, of necessity, review all of the judge's comments. Moreover, in making this determination it is not necessary that an appellate court be convinced that the trial judge in fact relied upon an erroneous consideration; **it is sufficient to render a sentence invalid if it reasonably appears from the record that the trial court relied in whole or in part upon such a factor**.

*Id.* at 106–07 (emphasis added).

We make this determination presuming that a sentencing court is able to disregard irrelevant evidence, such as an impermissible sentencing factor. *Commonwealth v. Smithton*, 631 A.2d 1053, 1057 (Pa. Super. 1993) (citing *Bethea*, 379 A.2d at 107). Further, we note that it is well-settled that defendants who plead guilty and those who proceed to trial are not similarly situated for sentencing purposes; therefore, a comparatively harsher sentence does not demonstrate punishment for exercising constitutional rights. *Commonwealth v. Ali*, 197 A.3d 742, 764 (Pa. Super. 2018) (citing *Moury*, 992 A.2d at 171), *appeal denied*, 652 Pa. 269 (Apr. 30, 2019).

Here, it does not appear from the judge's comments at sentencing that the sentencing court relied on an impermissible factor. While the sentencing court's emphasis of Olinsky's lack of remorse and the jury's disbelief of Olinsky's testimony reflect an awareness of the procedural history of the case, we conclude that they do not show a reliance on Olinsky's exercise of his right to a jury trial in imposing sentence. N.T., Sentencing, 5/11/20, at 29–30; *cf. Moury*, 992 A.2d at 172–74 (finding no error from a colloquy about why a defendant went to trial). Additionally, the sentencing court notes in its opinion

- 16 -

that it provided reasons for departing from the sentencing guidelines and imposing the maximum sentence available. Trial Court Opinion, 11/23/21, at 38–39. "The departure was not a result of [Olinsky] exercising his right to jury trial, but, rather, due to his inability to be rehabilitated, his prior record, his lack of remorse, and his failure to take responsibility for his actions," which contributed to Mr. Harris' severe injuries. *Id.*

Nor do the other points Olinsky emphasizes show that he was punished for going to trial. Olinsky's Brief at 67–68. As to the 3½-to-7-year plea offer, this was part of the negotiation with the Commonwealth, not an indication of the trial court's discretion. That Olinsky received the maximum possible sentence shows only that his sentence exceeded the guidelines; it does not show why. The other Pagans' sentences are not comparable. *Ali*, *supra*. Vasquez's sentence, identical to Olinsky's, was also not based on an impermissible factor, as noted in the companion case at No. 190 WDA 2021. Because it does not reasonably appear from the record that the sentencing court relied on Olinsky's exercise of his right to trial, we will affirm the sentencing court's exercise of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/3/2023